## THE STATE v. JACOB MAURER, BENJAMIN SURKAMP and THOMAS SHORTELL, Appellants.

### Division Two, February 17, 1914.

1. **STATUTES: Headings and Catchwords.** The headings of chapters, articles and sections are no part of the statutes, and are not to be considered as aids to an ascertainment of their meaning. They are mere arbitrary indices or catchwords inserted for convenience of reference by clerks or revisers, who have no legislative authority, and are therefore powerless to lessen or expand the meaning of the law.

2. **INFORMATION: Sale of Oleomargarine: Interpretation or Definitive Clause not Used.** An information charging that defendant "did unlawfully sell and offer for sale a substance designed to be used as a substitute for butter, to-wit, oleomargarine, under the name of and under the pretense that the same was butter," etc., sufficiently charges an offense under Sec. 657, R. S. 1909. It was not necessary to employ in addition to the language of section 657 that of section 650. Even if it be conceded that section 650 is a definitive or interpretative clause of the seven sections which follow, the charge embraces all the constitutive elements of the offense denounced by sec-

tion 657, informs the accused of the nature of the cause of action against him, enables the court to determine whether the facts stated constitute an offense upon which a proper judgment may be rendered, and a judgment will be a bar to a future prosecution for the same offense; and those things are sufficient.

3. ————: ————: ————: **Conversion of Word "and" Into "or" in Statute.** The conversion of the word "and" in a statute into the word "or" is permissible when the effect would neither aggravate the offense nor increase the punishment; and no such effect would follow the conversion of the word "and" between the words "butter" and "designed" into the word "or" in section 650, declaring that "for the purpose of sections 650 to 662 of this article, every article, substitute or compound, other than that produced from pure milk, or cream from the same, made in the semblance of butter and designed to be used as a substitute for butter made from pure milk, or cream from the same, is hereby declared to be imitation butter." And an information charging an offense in the express words of section 657, declaring that "no person, by himself or another, shall sell or offer for sale any substance designed to be used for a substitute for butter under the name of or under the pretense that the same is butter," is not faulty because it does not use the words "made in the semblance of butter," found in section 650 and not found in ̇ said section 657. The substitution of the word "or" for "and" in said section 650 effectuates the legislative intent and purpose, which was to protect the public against fraud; and besides, without such substitution, the use of the word "oleomargarine" in the information after the words "a substance designed to be used as a substitute for butter, to-wit, oleomargarine," was, in effect, the same as the use of the words "made in the semblance of butter," as those words are the accepted definition of oleomargarine.

4. ————: **General Rule.** An information which charges the offense with sufficient particularity to advise the defendant with what he is charged is sufficient, and is all that he can demand or the law requires.

5. ————: **In Misdemeanor Cases.** The same nicety of expression is not required in informations based upon beneficient statutes enacted to protect the public against frauds in foods as is necessary in indictments charging common law felonies; and greater latitude is exercised by courts in the construction of such statutes, a violation of which is a misdemeanor, and in sustaining indictments and informations based thereon, than in those relating to graver offenses more immediately affecting individuals than the general public.

6. ————: **Sale of Oleomargarine: Omission of Name of Purchaser.** An information charging a defendant with selling or offering to sell "a substance designed to be used as a substitute for butter, to-wit, oleomargarine," need not charge the name of the purchaser. The name of the purchaser is not essential to the description of the offense, nor does the offense involve the commission of a trespass against the property or person of another.

7. ————: ————: **False Pretense.** An information charging the sale of a substance designed to be used as a substitute for butter need not specify the pretense under which the sales were made. It is sufficient if it charges the offense in the language of the statute.

8. ————: ————: **Intent.** Nor is it necessary that the information charge that the defendant knew the substance sold was oleomargarine. The criminality of the offense under the statute does not depend upon the intent with which the sale is made, but upon the fact that the spurious substance is sold or offered for sale.

9. **APPELLATE PRACTICE: Quantum of Proof.** Unless there is an absence of substantial evidence to sustain the verdict, the finding of the jury, who are the judges of the facts, will not be disturbed by the court on appeal.

10. **SALE OF OLEOMARGARINE: Made by Clerk or Agent.** A defendant is chargeable with the sale of oleomargarine made by his clerk in the ordinary course of business, unless made against defendant's order, and that would constitute a matter of defense.

Appeal from St. Louis Court of Criminal Correction.— *Hon. Benjamin J. Klene,* Judge.

AFFIRMED.

*Zachritz & Zachritz* for appellants Surkamp and Maurer.

(1) The information charges no violation of law. In order to charge the offense under section 4835, the information should have alleged a sale, or offer of sale, of the imitation substitute for butter without packing the same in firkins, tubs or paper packages, with the true name of said imitation substitute clearly and

indelibly branded, marked or labeled thereon. It is fundamental that an indictment or information predicated upon the provisions of a statute must charge the offense in the language of the statute, and the allegation must be sufficient to fully inform the defendant of the nature and character of the offense he is called upon to answer on his trial. State v. Watson, 216 Mo. 420; State v. Gibbs, 129 Mo. App. 700; State v. Haney, 130 Mo. 95-98; State v. Lentz, 184 Mo. 223. (2) The court should have sustained defendant's demurrer at the close of the State's case. To authorize a conviction for a statutory crime every essential element of the offense provided for by the statute must be established by the State. State v. Dines, 206 Mo. 649; State v. Lentz, 184 Mo. 223. (3) The evidence, including defendant's testimony, all shows that defendant was not present on the day of the sale, had no knowledge of what transpired; that the firkins containing oleomargarine were labeled such; that he had a government license, and that he had not given consent to the sale by this clerk, but, on the contrary, that his instructions to all of his clerks, including this one, had been to sell oleomargarine for oleomargarine and butter for butter. State v. Meagher, 49 Mo. App. 571; State v. William James, 63 Mo. 570. (4) The court should have sustained a demurrer at the close of the whole case. State v. Meagher, 49 Mo. App. 571; State v. James, 63 Mo. 570.

*Fauntleroy, Cullen & Hay* for appellant Shortell.

(1) The information is a mere copy of a statute which does not individuate the offense, and is insufficient. State v. Miner, 233 Mo. 312; State v. Burke, 151 Mo. 142; United States v. Cruickshank, 92 U. S. 542; State v. Meysenburg, 171 Mo. 25; State v. Krueger, 134 Mo. 262; State v. Watson, 206 Mo. 420; State v. Stowe, 132 Mo. 199; State v. Fraker, 148 Mo. 143; State v. Barbee, 136 Mo. 440; State v. Pickett, 174 Mo.

668; State v. Cameron, 216 Mo. 420. (2) The information does not allege or specify what the .pretense was. It is, therefore, not sufficiently definite to inform the accused of the nature and cause of the accusation against him as required by Constitution, art. 2, sec. 22; People v. Brady, 56 N. Y. 182; State v. Martin, 226 Mo. 538; State v. Pickett, 174 Mo. 663; State v. Fraker, 148 Mo. 143; State v. Levy, 119 Mo. 434; State v. Kain, 118 Mo. 5; State v. Chapel, 117 Mo. 639; State v. Fleming, 117 Mo. 377; State v. Cameron, 117 Mo. 371; State v. Benson, 110 Mo. 18; State v. Terry, 109 Mo. 601; State v. Clay, 100 Mo. 571. (3) In the information no person is named to whom the sale was made. State v. Miner, 233 Mo. 312; Robertson v. City, 38 N. J. L. 72; People v. Burns, 6 N. Y. Supp. 611; Flannagan v. Plainfield, 44 N. J. L. 119; State v. Burke, 151 Mo. 144; State v. Martin, 108 Mo. 117. (4) For aught that appears in the information, the defendant may have been in entire ignorance that the package was not butter. The information should allege that the defendant knew the article was imitation butter and pretence was false. *Scienter* is not alleged. Com. v. Boynton, 12 Cush. (Mass.) 500; State v. Roberts, 201 Mo. 722; State v. Bradley, 68 Mo. 140; State v. Phelon, 159 Mo. 127; State v. DeLay, 93 Mo. 98; State v. Peacock, 31 Mo. 413; People v. Behee, 51 N. W. (Mich.) 515. (5) There is no proof in the case tending to prove that the oleomargarine sold was a substitute for butter and hence the court erred in assuming, in the instruction given, that oleomargarine was a substitute for butter and erred in refusing defendant's instruction, covering this issue, and erred in overruling defendant's request for a verdict of acquittal. People v. Meyer, 60 N. Y. Supp. 415; People v. Wahle, 109 N. Y. Supp. 629; People v. Schnizius, 113 N. Y. Supp. 313; Bennett v. Carr, 96 N. W. (Mich.) 26; People v. Simpson, 114 N. Y. Supp. 945; People v. Arensberg, 103 N. Y. 388, 57 Am. Rep. 741. (6) The evidence in

this case was wholly insufficient to prove that the ar-
ticle sold was "imitation butter" or a substitute for
butter. Authorities, supra; People v. Wahle, 109 N.
Y. Supp. 629; People v. Hillman, 69 N. Y. Supp. 66.

*John T. Barker,* Attorney-General, and *Paul P.
Prosser* for the State.

(1) A cardinal rule in the construction of stat-
utes is to ascertain and give effect to the intention of
the Legislature. For the purpose of discovering the
legislative intent, it is always proper, and often neces-
sary, to consider the history of the statute, the reason
of its enactment, and the prior state of the law on the
subject to which the statute relates. State v. Eck-
hardt, 232 Mo. 54; Decker v. Diemer, 229 Mo. 324. (2)
The object of section 657 is to protect the public against
fraud in the sale, as butter, of any substitute there-
for. People v. Freeman, 242 Ill. 373; State v. Adding-
ton, 17 Mo. App. 225, 70 Mo. 110; State v. Bockstruck,
136 Mo. 356. (3) The object of the statute is in keep-
ing with the general course of legislation in this State
with reference to preventing fraud and deception in
the manufacture and sale of oleomargarine and other
substitutes for butter. Laws 1877, p. 319; Sec. 1599,
R. S. 1879; Laws 1881, p. 120; Laws 1885, p. 149;
Laws 1887, p. 174; Secs. 3885 and 3886, R. S. 1889.
(4) Having ascertained the object of the statute, it
is the duty of the court so to construe it as to fur-
ther the remedy and suppress the evil. Decker v. Die-
mer, 229 Mo. 324; Keeney v. McVoy, 206 Mo. 65; State
ex rel. v. Gmelich, 208 Mo. 159; 36 Cyc. 1110. (5)
While criminal statutes must be strictly construed, yet
courts are not authorized to so interpret them as to
defeat the manifest intent and purpose of the Legisla-
ture. State v. Woodward, 182 Mo. 407; State v.
Walker, 129 Mo. App. 374; Groff v. State, 171 Ind.
547; State v. Whitaker, 160 Mo. 68; Yall v. Snow,
201 Mo. 521; Riggs v. Railroad, 120 Mo. App. 349;

Weirich v. State, 22 L. R. A. (N. S.) 1221. (6) Construction and interpretation have no place or office where the language of a statute is unambiguous and its meaning evident. Clark v. Railroad, 219 Mo. 534; Henry, etc., Co. v. Evans, 97 Mo. 52; State ex rel. v. Riley, 203 Mo. 187. (7) This court will take judicial notice that the term "oleomargarine" is of equivalent import with the statutory definition of "imitation butter." Schollenberger v. Pennsylvania, 171 U. S. 9; 29 Cyc. 1475; Black's Law Dictionary; Standard, Century and Webster's New International Dictionaries; Act Congress, Aug. 2, 1876, ch. 240; Laws 1877, p. 174. (8) Where the information charges the offense in words of equivalent import with the statutory words, it is sufficient. State v. Williams, 21 Mo. 496; State v. Dengolensky, 82 Mo. 44; State v. Effinger, 44 Mo. App. 83. (9) The informations sufficiently individuate the offense, are in the language of the statute creating it, and clearly apprised the defendants of the charge which they were called upon to answer. State v. Presbury, 19 Mo. 345; State v. Kennon, 21 Mo. 263; State v. Van Wye, 136 Mo. 237; State v. Bockstruck, 136 Mo. 35; State v. Dewitt, 152 Mo. 84; State v. West, 157 Mo. 316; State v. Hall, 164 Mo. 531; State v. Hendrickson, 165 Mo. 267; State v. Lee, 228 Mo. 492; State v. Hilton, 248 Mo. 530; State v. Becker, 248 Mo. 562; Rasch v. State, 89 Md. 755; United States v. Hess, 124 U. S. 483. It may not be amiss to suggest, in this connection, that the same nicety is not required in drawing informations in cases of minor offenses as is required in charging common law felonies. State v. Fletcher, 18 Mo. 427; State v. Nelson, 19 Mo. 396; State v. Hogle, 156 Mo. App. 372; State v. Rouelle, 137 Mo. App. 623.

WALKER, P. J.—Appellants were prosecuted in the court of criminal correction, in the city of St. Louis, upon separate informations charging them with

violations of section 657, Revised Statutes 1909 (originally enacted as Sec. 6, Laws 1895, p. 26), in having sold oleomargarine under the pretense that the same was butter. Aside from formal matters and that the defendants in the Maurer and Surkamp cases made the sales by clerks, the informations are identical in alleging that the defendant ''did unlawfully sell and offer for sale a substance designed to be used as a substitute for butter, to-wit, oleomargarine, under the name of and under the pretense that the same was butter,'' etc.

Upon trials before juries, each of the appellants was found guilty, and Maurer was fined fifty dollars, and the others one hundred dollars each.

These cases, as Mrs. Malaprop might have said, have been ''pendulating'' between this court and the St. Louis Court of Appeals since judgments were rendered therein by the trial court in 1910, experiencing a difficulty not unlike that encountered by Noah's dove on its first voyage—their ambulatory history being thus noted in the records: The constitutional validity of the statute upon which the prosecutions were based, having been questioned in the motions in arrest of judgment, the cases were appealed to this court, where it was held that the constitutional question had not been timely raised and the cases were ordered transferred to the St. Louis Court of Appeals. Upon hearings there, the judgments of the trial court were reversed in an opinion by ALLEN, J., in which NORTONI, J., concurred, and REYNOLDS, J., dissented, in a separate opinion, in which he held that the majority opinion was in conflict with a previous decision of the Supreme Court, whereupon the cases were again transferred to this court for final determination.

The facts and the assignments of error being practically the same in these cases, we will, for convenience, consider them together; where different, we will review them separately.

Appellants contend that the informations charge no offense; that the testimony was insufficient to sustain the prosecutions; that the trial court erred in the exclusion of testimony, and that certain remarks of counsel for the State constituted reversible error.

I.  The headings of chapters, articles or sections are not to be considered in construing our statutes; these *indicia* are mere arbitrary designa-

Headings of Chapters, etc., no Part of Law.

tions inserted for convenience of reference by clerks or revisers, who have no legislative authority, and are, therefore, powerless to lessen or expand the letter or meaning of the law. [Ferguson v. Gentry, 206 Mo. 189, 195; State v. Doerring, 194 Mo. 398, 414; Logan v. Fidelity Co., 146 Mo. 114, 122; Huff v. Alsup, 64 Mo. 51.]   This observation is made preliminary to a review of the statutes upon which the informations are based, on account of references in the majority opinion of the Court of Appeals to these headings as aids to construction.

II.  A review of sections 1 and 6 of the original act of 1895 (Laws 1895, p. 26), which have been carried forward in the same words in the re-

Sufficiency of Information.

vision of 1909, as sections 650 and 657, is necessary in determining the sufficiency of the informations in these cases.

These sections are as follows:

"Sec. 650.  *Imitation butter defined.*—For the purpose of sections 650 to 662 of this article, every article, substitute or compound, other than that produced from pure milk, or cream from the same, made in the semblance of butter and designed to be used as a substitute for butter made from pure milk, or cream from the same, is hereby declared to be imitation butter."

"Sec. 657. *Offering imitation butter for sale.*— No person, by himself or another, shall sell or offer for sale any substance designed to be used for a substitute for butter under the name of or under the pretense that the same is butter."

The contention of the appellants is that the informations are invalid in failing to charge the offense in the language of section 650, in addition to that of section 657, upon which the informations are drawn. These sections are each complete in themselves, and, while appellants do not so expressly state, the implication necessarily follows from their contention that section 650 is to be regarded as a definitive or an interpretation clause of section 657, and, if so, it is necessary in charging an offense under said section to employ in addition to its own language, that of section 650, on the ground that the latter embraces a part of the constituent elements of the offense.

The rule is not questioned that an information or indictment based upon a statute defining an offense unknown to the common law is sufficient if drawn in the express language of the statute, if it contains all the constituent elements of the offense; if not, these elements must be added. [State v. Harroun, 199 Mo. 519.] The reason for the charging of all the elements constituting an offense is, first, that the accused may be fully informed of the charge made against him; second, that the court may be enabled to determine whether the facts stated constitute an offense upon which a proper judgment may be rendered; and, third, that the judgment may be a bar to a future prosecution for the same offense. [Arch. Cr. Pl. 42, 43; Comm. v. Pray, 13 Pick. (Mass.) 359, 363; Clark's Cr. Pr. 150.] No such difficulty can arise in the cases at bar; the informations charge the offense in the express language of the statute, which is clear and unequivocal, and add that the substance designed to be used as a

substitute for butter was "oleomargarine." If it be admitted, therefore, that section 650 is an interpretation clause of section 657, no necessity existed under the rules of criminal pleading for the insertion of any of the words of the former section in an information based on the latter, and such insertion would have been, as we will presently show in discussing the meaning of the word oleomargarine, redundant and expletory. However, without violating any of the canons of construction, or defeating the purpose of the statute, or, in any way, aggravating the offense, section 650 may be construed to be an interpretation clause, not only of section 657, but of the other sections (Secs. 651-657) defining offenses in the original act, provided the wording of said section (650) be interpreted as was the evident intention of the Legislature when it was enacted. This may be accomplished by inserting the word "or" instead of the word "and" between the words "butter" and "designed," so that the portion of said section (650) under discussion shall read "made in the semblance of butter *or* designed to be used as a substitute for butter," etc. While it has been held that the word "and" cannot be read "or," or *vice versa,* in criminal statutes, this ruling is subject to qualifications, and is opposed to the greater weight of authority, many cases holding that a conversion of those words, one into the other, is permissible, although it may operate to the disadvantage of the accused when the spirit and reason of the law plainly require and justify it. [Potter's Dwarris, p. 296; State v. Long, 238 Mo. l. c. 392; Rolland v. Comm., 82 Pa. St. 306, 326; U. S. v. Moore, 104 Fed. 78; Swearingen v. U. S., 161 U. S. 446, 450.] The limitation on this rule is that the conversion should not be made when the effect would be to aggravate the offense or increase the punishment. [State v. Walters, 97 N. C. 489, 2 Am. St. 310.] The application of the rule to the cases at bar cannot by any reasonable interpretation be said

to have this effect. That it was the intent and pur-
pose of the Legislature to use the word "or" instead
of "and," as we have indicated, will become evident
upon a comparison of the different sections of the stat-
ute under review. To illustrate: · Section 651 de-
nounces the making, selling, keeping, or offering for
sale, substances "made in the semblance of butter,"
while each of the ·other sections (652-657) define of-
fenses in regard to marking, shipping under its true
name, branding mixtures and renovated butter, hav-
ing unmarked containers. in possession, and offering
for sale, not "substances made in the semblance of
butter," but, as expressly stated in each of said sec-
tions, substances which "may be designed to be used
as substitutes for butter." Thus construed, section
650 may reasonably serve as an interpretation clause
to all of the succeeding sections of said act, the phrase
in regard to substances "made in the semblance of
butter," being applicable to section 651 alone, and
that expressed in the words "designed to be made as
a substitute for butter" applying to each of the other
sections.

The prime purpose of the statute is to protect
the public against fraud, to enable purchasers to ob-
tain what they intend to buy, and, as an incident there-
to, to discourage, by the imposition of fines, the man-
ufacture of or dealing in the articles designated. While
it is not necessary to violate the rule in regard to the
strict construction of criminal statutes, in order to
sustain the sufficiency of the informations in the instant
cases, such a narrow construction should not be made
as will, in effect, defeat the intent and purpose of the
Legislature. As was well said by FERRISS, J., in State
v. Lovan, 245 Mo. 1. c. 532, "when an information,
taken as a whole, clearly advises the defendant that he
is charged with an offense as defined by the statute,
and clearly sets forth the facts on which the charge
is based, it is sufficient." And in State v. Woodward,

182 Mo. l. c. 407, GANTT, J., said: "While criminal statutes are to be strictly construed in favor of the defendant, the courts are not authorized to so interpret them as to defeat the obvious purpose of the Legislature or so to narrow the words of the statute as to exclude cases which those words in their ordinary acceptation would include." To so narrowly construe the statute as to require an indictment or information bottomed on section 657 to contain, in addition to the words of the section, the words "made in the semblance of butter" would have no other effect than to defeat the purpose of the law, because any substances designed to be used as substitutes for butter, the manufacture or sale of which are intended to be prohibited, are not made in the semblance of butter. This the Legislature must have known and, therefore, the substitution of "or" for "and" but effectuates the legislative will.

However, without the substitution of "or" for "and" in section 650, an information or indictment drawn upon section 657, with the addition of the word "oleomargarine," as it appears in these informations, will be sufficient. The addition of this word to that of the express language of the statute, is, in effect, the same as the use of the words "made in the semblance of butter," oleomargarine being thus defined by the act of Congress in relation thereto (Act of Congress, Aug. 2, 1886, Chap. 840), and in many judicial interpretations of the words (Braun v. Coyne, 125 Fed. 331; Comm. v. Vandyke, 9 Pa. Dist. 49; Butler v. Chambers, 36 Minn. 69; 29 Cyc. 1475), as well as the meaning given it by the standard lexicographers; from all of which "the court will be presumed," as Judge BROWN has pithily said in a recent case, "to know what everybody else knows," and judicial cognizance will, therefore, be taken of the fact that oleomargarine is a substance made in the semblance of butter; from which reasoning it follows that the informations were not

only drawn in the language of the particular section defining the offense, but state all the constituent elements which it is contended should be included therein by reason of section 650.

In construing informations based upon statutes of the character of the one in question, not a little consideration should be given to the purpose of the act, which is beneficent, but also to the grade of the offense, greater latitude being exercised by the courts in the construction of statutes defining misdemeanors to prevent frauds and in sustaining informations or indictments based thereon, than those which have to do with graver offenses and more immediately affect individuals than the general public.

The terse reasoning of REYNOLDS, J., in State v. Rouelle, 137 Mo. App. 1. c. 623, is appropriate in this connection. It is as follows: "The matter for our determination in a case of this kind, that is to say, any of this class of misdemeanors, is, to endeavor to ascertain whether the information substantially charges an offense, aimed at by the statute, with sufficient particularity to apprise the defendant of the act with which he is charged and to serve as a bar to a further prosecution of him for the same offense. We do not propose, in handling cases under these statutes . . . to indulge in unnecessary technicalities or refinements of reason. . . . The information in this case . . . charges this offense with sufficient particularity, to advise this defendant with what he is charged." This is all the appellants can demand, or that the law requires.

This measure of sufficiency of an information charging a misdemeanor, is affirmatively stated in State v. Hogle, 156 Mo. App. 1. c. 372, in which NIXON, J., citing State v. Fletcher, 18 Mo. 1. c. 427; State v. Nelson, 19 Mo. 1. c. 396, and State v. Seiberling, 143 Mo. App. 1. c. 321, says: "The same nicety is not required

in drawing indictments in cases of minor offenses as is required in charging common-law felonies.''

While this court has not, heretofore, in the discussion of informations or indictments based upon this statute, given particular consideration to the interpretation of the section on which these charges are based, its deductions, as attested by the adjudicated cases having reference to kindred sections, are in accord with the conclusions reached here.

In State v. Bockstruck, 136 Mo. 335, an information was based on section 2 of the original act (now Sec. 651, R. S. 1909). The information contained all the substantial allegations of the section, but none of the express language of section 650, yet the charge was held sufficient to sustain a conviction.

The phraseology of the information in State v. Newell, 140 Mo. 282, was similar to that employed in the Bockstruck case, supra, and was based on the same section of the statute; it, however, contained none of the language of section 650, but was, nevertheless, held to properly charge the offense under the statute.

In State v. Stocker, 80 Mo. App. 354, an information was based on section 2, Laws 1895, p. 26 (now Sec. 651, R. S. 1909), which charged the offense in the language of that section, without reference to section 650, and the information was held to be sufficient.

The sufficiency of these informations is, therefore, in our opinion, established by reason, as well as authority.

III. The name of the purchaser of the oleomargarine was not a necessary allegation in charging the offense. Where the name of a person other than the accused is not essential to the description of the offense, as it was not in these cases, or the offense does not involve the commission of a trespass against the person or property of another, thereby becoming an essential ingredient of the offense, its omission from an indictment or in-

Name of Purchaser.

formation is not error. [State v. Pollock, 105 Mo. App. 1. c. 277.] This rule has been repeatedly announced in this State in cases charging violations of the liquor laws; and for like reasons we are of the opinion it is equally applicable in cases charging infractions of the pure food laws. In charging violations of the liquor laws and in the concrete cases, the offenses consist in the sales of the prohibited articles; the rule, therefore, authorizing the omission of the name of the purchaser from the charge may be applied with equal propriety to either class of cases, and we so hold.

The following authorities here and elsewhere support this conclusion: State v. Jaques, 68 Mo. 260; State v. Haney, 151 Mo. App. 1. c. 253; State v. Merget, 129 Mo. App. 46; Commonwealth v. Lampton, 4 Bibb (Ky.), 261; State v. Cooney, 72 N. J. L. 76.

IV. There is no merit in appellants' contention that the informations are insufficient in not specifying the pretense under which the sales were **False Pretenses.** made. The instant cases embrace offenses wholly foreign to those requiring a compliance with the rules of criminal pleading applicable to charges of false pretenses; they charge violations of a statute, the purpose of which is to regulate the dealing in and selling of an article which common experience has demonstrated is a fertile source of fraud and deception, and they are sufficient in charging the offenses in the language of the statute.

V. The criminality of the offenses charged did not depend upon the intent with which the sales were made, but the fact that they were made, hence, it was **Intent, etc.** not necessary to allege that appellants knew the article sold was oleomargarine; the act of selling and not the operation of the mind of the seller at the time of the sale constituted the crime. Under this state of facts no averment of knowledge

or intent was necessary other than is involved in a statement of the offense. [State v. Sakowski, 191 Mo. 635, 645; State v. Kentner, 178 Mo. 487, 493; State v. McCollum, 44 Mo. 343, 345; State v. Haney, 130 Mo. App. 95.]

In a Pennsylvania case it was said of a statute with regard to the sale of oleomargarine: "The prohibition is absolute and general; it could not be expressed in terms more explicit and comprehensive. The statutory definition of the offense embraces no word implying that the forbidden act shall be done knowingly or wilfully, and, if it did, the design and purpose of the act would be practically defeated. The intention of the Legislature is plain, that persons engaged in the traffic shall engage in it at their peril, and that they cannot set up their ignorance of the nature and qualities of the commodities they sell, as a defense." [Commonwealth v. Weiss, 139 Pa. St. 247, 23 Am. St. 182, 11 L. R. A. 530, note. So in Indiana, Isenhour v. State, 157 Ind. 517, 87 Am. St. 228; Strong v. State, 2 Ohio N. P. 93, 3 Ohio Dec. 284; Bissman v. State, 9 Ohio Cir. Ct. Rep. 714; State v. Kelly, 54 Ohio St. 166.]

VI. Unless there is an absence of substantial evidence to sustain the verdict, the finding of the jury, who are the judges of the facts, will not **Quantum of Evidence.** be disturbed. While not required to do so, except to determine if there is any substantial evidence, we have examined the transcript of the testimony in these cases and find no lack of proof of appellants' guilt. [State v. Barton, 214 Mo. 316, 321; State v. Sassaman, 214 Mo. 695, 737; State v. Chenault, 212 Mo. 132, 137.]

VII. No testimony was excluded which, if admitted, would have tended to sustain the **Exclusion of Testimony.** defense made by the appellants; they were, therefore, not prejudiced in this regard and will not be heard to complain.

VIII. The instructions taken as a whole fairly
presented the law of the case, and are
**Instructions.** subject to no objection upon which can
be based a substantial ground of error.

IX. Appellants have not neglected to wield that
"trenchant blade, Toledo trusty," which from much
use hath ne'er grown rusty, as one of the
**Remarks of Attorney.** assignments of error deemed sufficient to
effect a reversal, to-wit, the remarks of
the prosecuting attorney. A review of the testimony
discloses that in one instance the remarks were
prompted by the argument of counsel for the defense,
and in the other that they consisted of argumentative
deductions based upon the evidence. Measured by the
multiplied illustrations found in the reports of this
form of assignment of error, we do not find these in
question to have been prejudicial, and consequently not
a substantial ground of error.

X. In two of the cases at bar the proof showed
that the sales were made by clerks of the appellants.
The language of the statute is that "no
**Sales by Agent.** person, by himself or another, shall sell
or offer for sale," etc. The sales by the
clerks, as shown by the evidence, were made in the or-
dinary course of business. If made against the order
of the principals, this was a matter of defense. [State
v. Bockstruck, 136 Mo. 335, 350.] Under statutes sim-
ilar in phraseology to the one on which these informa-
tions are based, it has been held by a number of courts
of last resort that when a sale is made by an agent
or clerk it is sufficient if the information or indictment
so charges, and proof of a sale in such a manner will
constitute prima-facie evidence of guilt. [See cases
cited under Sec. 601, p. 768, Thornton on Pure Food
and Drugs.]

The minority opinion of the St. Louis Court of
Appeals is in full accord with the conclusions made

herein and would have been adopted as the opinion of this court but for the fact that it discusses and disposes of a number of questions not assigned as grounds of error here.

From all of the foregoing, we are of the opinion that the conclusions reached in the majority opinion of the St. Louis Court of Appeals, in each of the cases under review, should be overruled, and that the judgments rendered therein by the court of criminal correction should be affirmed, and it is so ordered. *Brown* and *Faris, JJ.,* concur.