STATE of Missouri, at the relation of Gary RYBOLT and Pat Rybolt, husband and wife, Relators-Appellants,

v.

Amy EASLEY, David Horner, Dale Kennedy, Roland Walker, and Robert Spiva, being all the members of the Boone County Board of Adjustment

and

Boone County, Missouri, Respondents-Respondents.

No. WD 30931.

Missouri Court of Appeals, Western District.

May 5, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 9, 1980.

Application to Transfer Denied July 15, 1980.

Tony K. Vollers, Columbia, for relators-appellants.

Kandice Johnson, Asst. Pros. Atty., Columbia, for respondents-respondents.

Before WASSERSTROM, C. J., Presiding, and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

Appellants' petition was in two counts. Count I was for a writ of certiorari pursuant to § 64.870, RSMo 1978.[1] Count II was for declaratory judgment and injunction. Appellants sought to prevent respondents, members of the Boone County Board of Zoning Adjustment, from enforcing rules and regulations of the Board restricting the operation of a dog kennel within a particular designated zoning district. The case was tried to the court, which entered findings of fact and conclusions of law. Judgment was entered in favor of the Board. Review of this case is made upon both the facts and the law. The record of this case renders final disposition of the cause possible and this court, pursuant to Rule 84.14, may enter the judgment the trial court should have entered. The judgment is affirmed.

Appellants are individual citizens and residents of Boone County, Missouri. They operate a dog kennel upon their property. This operation involves the breeding, feeding and sale of six breeds of dogs. The district in which appellants live and operate their kennel is, by county rule and regulation, zoned A–2, an agricultural district.

An employee of the Board notified appellants that a citizen had complained of the dog kennel operation. The notice informed appellants that the kennel operation was a commercial operation and as such was prohibited in an A–2 district. Following this notice, appellants sought a waiver of the restriction, but the waiver was denied. This suit followed.

The only evidence presented upon trial was by appellants. The Boone County Zoning and Subdivision Regulations were introduced into the record. In addition, four witnesses testified concerning kennel operations, and the main import of the testimony was the necessity that someone be on the premises and care for the dogs in a kennel operation 24 hours per day. Aside from the day to day task of providing the dogs with food and water, the need for someone to be

1. All statute references are to RSMo 1978.

present during the whelping [2] period was of extreme importance.

After the conclusion of the evidence and the opportunity for both parties to submit memoranda or briefs to the trial court, the trial court entered its memorandum opinion.[3] In its memorandum opinion, the court made the following findings and conclusions:

## "MEMORANDUM OPINION

Relators on July 7, 1977, filed an application to the Boone County Board of Adjustment, hereinafter referred to as the Board, for a variance from the Boone County Zoning and Subdivision Regulations, hereinafter referred to as Zoning Ordinance, which prohibit the operation of a kennel in a A–2 Agricultural District. After notice and hearing on July 27, 1977, the Board denied Relators' application for a waiver or variance. Relators filed a Petition for Writ of Certiorari in this Court on the 20th day of August, 1977, and were given leave to file a First Amended Petition on October 10, 1977, and a Second Amended Petition on December 11, 1978. Relators have requested in Count II of their petition that this Court declare those sections of the Zoning Ordinance prohibiting operation of a kennel in an A–2 Agricultural District invalid and enjoin Respondents from interfering with Relators' operation of such a kennel. Trial was held on February 22, 1979, and submitted for the filing of briefs. Relators, pursuant to Rule 73.01, have requested findings be made.

Now on this 16th day of April, 1979, the Court being duly advised finds that:

1. Relators are the owners of the following-described real property located in Boone County, Missouri:

the tract of land located in the SW Quarter (SW ¼) of Section Fifteen (15) township fifty (50) North, Range Twelve (12) West, containing twenty (20) acres, more or less, as shown by survey recorded in Book 414, page 201, records of Boone County, Missouri.

2. Said real property lies in an A–2 Agricultural District as established by the Zoning Ordinance, enacted pursuant to sections 64.850 and 64.885, RSMo., prior to the date Relators purchased said land.

3. The permitted uses of an A–2 Agricultural District are:
agricultural activities
single family dwelling on a tract of 2½ acres
park and forest preserve
bait house
church on tract of not less than 2½ acres
public or private school on tract of 2½ acres
greenhouse or nursery

The conditional uses of an A–2 Agricultural District are:
quarries, etc.
airport
privately owned recreational facility on a tract of 10 acres or more
new cemetery or enlargement of existing cemetery
farm implement sales and service and other agri-business uses oriented to the agricultural community
livestock sales barn and stockyard, provided that such activity is located at least 2,640 feet from an A–R RS, and/or RM zoning
water tower, sewage lagoon, mechanical treatment plant or sanitary landfill, were not approved under County Subdivision Regulations
Mobile Home Subdivisions

[Section 5, Paragraph A(2), Zoning Ordinance]

4. Relators operate a kennel for the breeding and raising of dogs on a commercial scale on the aforementioned land.

5. Operation of a kennel within an A–2 Agricultural District is neither a permitted nor a conditional use allowed by Zoning

---

**2.** Whelping was described as the giving of birth by the female dogs.

**3.** While the record refers to the receipt of both parties' trial briefs, they were not included upon the records of this appeal.

Ordinance and is therefore prohibited [Section 4, Paragraph A(1)].

6. Relators have adduced no evidence whatsoever either before the Board or at trial that by reason of exceptional narrowness, shallowness, shape or topography or other extraordinary or exceptional situation or condition of a specific piece of property, that the application of the Zoning Ordinance would result in peculiar and exceptional difficulties or exceptional and demonstrable undue hardship to them [Section 64.870, 1(3), RSMo.].

7. The kennel operated by Relators constitutes a 'commercial structure' and the A–2 Agricultural District within which Relators operate their kennel is zoned for residential use within the meaning of Section 64.890, RSMo.

8. The operation of a kennel requires the operator or his employee to be on the premises or available and nearby 24 hours a day.

9. The Zoning Ordinance permits a kennel to be operated in C–G General Commercial District, M–L Limited Industrial District and M–G General Industrial District [Section 5, Paragraphs A(8), (10) and (11)].

10. Accessory dwelling units for occupancy by owner or employee are permitted in Commercial Districts [Section 6B(5), Zoning Ordinance]. Dwellings for resident caretakers employed on the premises are permitted in Limited General Industrial Districts [Sections 5A(10)(e) and (11)(b), Zoning Ordinance].

11. It is neither impossible nor impractical to operate a dog kennel in Boone County, Missouri.

12. Relators, having purchased land after enactment of the Zoning Ordinance with full knowledge that the land was zoned A–2 Agricultural District, do not have a non-conforming use and may not assert the Zoning Ordinance provides for a taking of property without just compensation.

13. The raising and/or grazing and/or feeding of livestock and poultry is only considered an agricultural activity when it is incidental or supplemental with the raising of crops [Section 2, Zoning Ordinance]. The Court finds said classification is reasonable, not arbitrary, and designed to promote the raising or [sic] crops for food and feed. Likewise, the conditional use of an A–2 Agricultural District for a livestock sales barn and stockyard is a reasonable classification designed to promote the agricultural use of the land in question.

14. Sections 4A(1) and 5A(2) of the Zoning Ordinance are valid enactments under the county's police power and are not contrary to the provisions of Sections 68.890 and 64.855 RSMo., or the 14th Amendment to the United States Constitution. Article III, Section 40 (30) of the Missouri Constitution, being a limitation on the powers of the General Assembly, is inapplicable to the case at bar.

15. The denial of a variance to Relators by the Board should be affirmed.

16. Relators request for an injunction prohibiting Respondents from interfering with Relators' operation of a dog kennel in an A–2 Agricultural District should be denied.

NOW WHEREFORE IT IS ORDERED, ADJUDGED AND DECREED THAT THE JUDGMENT OF THE BOARD IS AFFIRMED. RELATORS REQUEST FOR INJUNCTIVE RELIEF IS HEREBY DENIED. COSTS TAXED AGAINST RELATORS."

On this appeal, three points of error are alleged. Appellants contend first that the trial court erred in concluding the questioned zoning regulations do not contravene § 64.890 because said regulations prohibit a dog kennel which is a commercial structure in an agricultural district, and that § 64.890 permits such prohibition only in districts zoned for residential or recreational use; and secondly that the trial court erred in concluding the questioned zoning regulations were reasonable as applied to commercial dog kennels since these regulations permit dog kennels only in commercially or industrially zoned districts, and the regulations generally prohibit a physically sepa-

rate residence in commercial and industrial districts, and the evidence was uncontradicted that it is necessary for someone to reside on the premises where a dog kennel is operated. For their final alleged error, appellants contend the rules and regulations of the respondent Board are discriminatory and arbitrary in that said rules and regulations permit the breeding and raising of all other types of animals except dogs, therefore said rules and regulations deny appellants equal protection under the laws, constitute special legislation and are contrary to § 64.855, which requires uniformity for each class or kind of land use throughout each zoning district.

Appellants, by their argument, attempt to bring their particular kennel operation within the exception of § 64.890. The only part of that section which is applicable to the case herein is set forth below:

"64.890. *Not to affect strip mining— limitations on use of powers.*—1. Nothing in sections 64.800 to 64.905 shall affect the recovery of natural resources by strip or open cut mining; provided, that commercial structures shall be permitted in all districts except those zoned for residential or recreational use."

It is apparent from analysis of the briefs and transcript of these proceedings that neither appellants nor the trial court properly construe the language of § 64.890. In the first instance, the appellants argue this section has general application to all commercial structures and from such interpretation they conclude, unless a district is zoned residentially or recreationally, there is to be no prohibition to the establishment of commercial structures. Following such posture, appellants conclude their dog kennel is therefore exempt from regulation by the Board because it is located in an A–2 or agricultural district and by application and operation of § 64.890(1).

On the other hand, the trial court must have felt it was necessary to specify the A–2 district as a residential zone to prevent the application of the exemption under § 64.890. This is to be found in the following conclusion by the court:

"7. The kennel operated by Relators constitutes a 'commercial structure' and the A–2 Agricultural District within which Relators operate their kennel is zoned for residential use within the meaning of Section 64.890, RSMo."

This appears to be a case of first impression which directly interprets § 64.890(1) above and it falls to this court to construe the intent expressed by the legislature in its enactment.

■ A fair and comprehensive reading of § 64.890(1) leads but to one conclusion, that being that it has application to the prohibition against the development of commercial structures attending to the recovery of natural resources by strip or open-cut mining. To put it another way, the legislature, by enactment of this section, recognized the importance of strip or open-cut mining as those processes relate to the economic development of our state. Further, unless local zoning authorities were prohibited from implementing local rules and regulations regarding commercial structures attending to strip or open-cut mining, such mining operations and hence the recovery of natural resources therefrom could be seriously curtailed.

Further illustration that § 64.890(1) has a limited or restricted application is determined from a reading of the entire § 64.890.

"64.890. *Not to affect strip mining— limitations on use of powers.*—1. Nothing in sections 64.800 to 64.905 shall affect the recovery of natural resources by strip or open cut mining; provided, that commercial structures shall be permitted in all districts except those zoned for residential or recreational use.

2. The provisions of sections 64.800 to 64.905 shall not be exercised so as to impose regulations or to require permits with respect to land used or to be used for the raising of crops, pasture, orchards or forestry or with respect to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures. The powers granted by sections 64.800 to 64.845 and 64.850 to 64.880 shall not be construed:

(1) So as to deprive the owner, lessee or tenant of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted;

(2) So as to deprive any court of the power of determining the reasonableness of regulations and powers in any action brought in any court affecting the provisions of sections 64.800 to 64.905 or the rules and regulations adopted thereunder;

(3) Nor to authorize interference with the public utility services as may have been or may hereafter be authorized or ordered by the public service commission or by permit of the county court, as the case may be."

While it is true that § 64.890 is a statutory section on the limitation or the use of local zoning authority and power, it follows from the precise wording of that section that such limitations are specific.

The last portion of § 64.890(1) which reads "that commercial structures shall be permitted in all districts except those zoned for residential or recreational use" is by its nature interrelated and is an integral portion of the first part of subsection (1), which is limited to and applicable only to limitation of local authority or control over strip or open-cut mining. If, as contended by appellant and perhaps suspected by the trial court, the last portion of subsection (1) of § 64.890 had general application, it follows that such general application would have been expressed within another or additional subsection of § 64.890.

As pointed out in appellants' brief, that statute now referred to as § 64.890 was created by enactment of HB–465, enacted by the Sixty-Sixth General Assembly. This particular bill included Section 18, which is found on pages 416 and 417 of the Session Laws of Missouri, 1951, and reads as follows:

"Section 18. *Not to affect strip mining—commercial structures permitted, where.*—That nothing herein shall effect [sic] the recovery of natural resources by strip or open cut mining, Provided; that commercial structures shall be permitted in all districts except those zoned for residential or recreational use.

Approved April 15, 1952."

Further research on this question reveals that the original HB–465 did not contain the restrictive language as regards commercial structures, but by way of amendment, the limitation on commercial structures was adopted as reflected in Section 18. The net result of this legislative process was the limiting of the power of local zoning authorities to interfere or restrict strip or open-cut mining operations.

■ It should be pointed out that the subtitle to § 64.890 is not construed as being a part of the statute. Such language is the result of the work deployed by the Revisor of Statutes and is not to be construed as part of the statute itself or as an aid in the construing of a statute, see *State ex rel. Agard v. Riederer*, 448 S.W.2d 577 (Mo. banc 1969); *State v. Maurer*, 255 Mo. 152, 164 S.W. 551 (1914); *Southwestern Bell Telephone Co. v. Drainage District No. 5 of Pemiscot County*, 215 Mo.App. 456, 247 S.W. 494 (1923); *Snow v. Hicks Bros. Chevrolet, Inc.*, 480 S.W.2d 97 (Mo.App.1972); *Chicago, B. & Q. R. Co. v. North Kansas City*, 367 S.W.2d 561 (Mo.1963); *Phillips Pipe Line Co. v. Brandstetter*, 363 Mo. 904, 254 S.W.2d 636 (1953), on transfer due to lack of jurisdiction, 241 Mo.App. 1138, 263 S.W.2d 880 (1954) and § 3.060, RSMo 1969.

However, within the expressed wording of subsection (1) of § 64.890, reference is made directly and restrictively to the operation of strip or open-cut mining.

To adopt the posture of appellants that the language of subsection (1) of § 64.890 applies to commercial structures other than those attending to the operation of strip or open-cut mines, would impress upon this particular statute by judicial construction an intent or application neither expressly nor inferentially intended by the legislature.

At this juncture, it should be pointed out appellants direct the court's attention to the case of *Ryder v. County of St. Charles*, 552 S.W.2d 705 (Mo. banc 1977), which held § 64.560 was unconstitutional. The ruling

in that case was that § 64.560 was a special law because the exemption set forth therein was available only to persons who recovered natural resources by strip or open-cut mining. Hence, the State Supreme Court ruled that § 64.560 violated Mo.Const. Art. III, § 40. § 64.560 reads as follows:

"64.560. *Not to affect strip mining— commercial structures permitted, where (second and third class counties).*—That nothing herein shall affect the recovery of natural resources by strip or open cut mining; provided that commercial structures shall be permitted in all districts except those zoned for residential or recreational use."

As can readily be seen, § 64.560 reads identical to § 64.890(1). However, the case of *Ryder v. County of St. Charles, supra*, does not address § 64.890.

It should be further noted the issue in *Ryder v. County of St. Charles, supra*, centered upon the limitation of a class of persons who recovered natural resources by strip or open-cut mining. That decision did not, by direction or inference, broaden the exemption language to all commercial structures.

If it were to be held that § 64.890(1) was inferentially struck down because of the ruling in *Ryder v. County of St. Charles, supra*, then appellants could not, as they purport to do, avail themselves of the exemption portion thereof.

This court views the decision in *Ryder v. County of St. Charles, supra*, as an illustration that neither the appellants nor the trial court properly viewed the construction and application of § 64.890(1). In other words, the exemptions provided under § 64.560 and § 64.890(1) are limited to commercial structures attending to strip or open-cut mining operations and have no general application to commercial structures. That § 64.890(1) might by inference be held invalid under *Ryder v. County of St. Charles, supra*, this court does not rule, and consideration of that issue is not dispositive of this appeal.

■ Under its finding No. 7, the trial court should have found that § 64.890(1) had no application herein because of the

limited application of said statute to the removal of natural resources. The result reached, however, by the trial court herein is correct and upon review, the judgment will not be disturbed merely because the trial court assigned an incomplete or erroneous reason for its judgment, see *Farm Bureau Mutual Ins. Co. v. Broadie*, 558 S.W.2d 751, 753 (Mo.App.1977), citing *Edgar v. Fitzpatrick*, 377 S.W.2d 314 (Mo. banc 1964) and *Producers Produce Co. v. Industrial Commission*, 365 Mo. 996, 291 S.W.2d 166 (banc 1956).

■ Upon the finding that § 64.890(1) has no applicability, the question still remains as to whether a district zoned A–2, by its definitions and restrictions, may prevent the operation of a dog kennel. The particular district in question is defined as to use, both permissible and conditional, in Section 5, Paragraph 2(a) as follows:

"(2) *A–2 Agriculture District*

Permitted Uses:

Agricultural activity

Single-family dwelling on a tract of 2½ acres

Park and forest preserve

Bait house

Church on tract of not less than 2½ acres

Public School, elementary and high, or private school on tract of 2½ acres

Greenhouse or nursery

Conditional uses:

Quarries, etc.

Airport

Privately operated recreational facility on tract of 10 acres or more

New cemetery or enlargement of existing cemetery

Farm implement sales and service and other agri-business uses oriented to the agricultural community

Livestock sales barn and stockyard, provided that such activity is located at least 2640 feet from A–R, RS, and/or RM zoning

Water tower, sewage lagoon, mechanical treatment plant or sanitary landfill,

where not approved under County Subdivision Regulations

Mobile home subdivision

Mobile home"[4]

Under the rules of the Boone County zoning authorities, the following definitions are to be found which, of course, are an integral part of the zoning restrictions. The two terms below, by their definitions, bear directly upon the issues of the instant case.

"*Agricultural or Farming Activity*: The planting, cultivating, and harvesting of grains, hay, forest products, or plants commonly grown in Boone County. The storage of crops, grains, feeds, or other products shall be limited to those raised on or to be consumed on the premises. The raising and/or grazing and/or feeding of livestock and poultry shall be considered an agricultural activity when it is incidental or supplemental with the raising of crops. A minimum of ten (10) acres shall be required for agricultural or farming activity for the purposes of these regulations."

"*Kennel*: An establishment where small animals are boarded for compensation or where dogs are bred or raised on a commercial scale."[5]

From a reading of the permitted and conditional uses under and subject to an A–2 district, there is no reference which either directly or inferentially permits the operation of a dog kennel.

Appellant argues the court erred in concluding an A–2 district was residential when in fact it is agricultural, and cites for the court the case of *County of Ada, Board of County Com'rs v. Walter*, 96 Idaho 630, 533 P.2d 1199 (1975), wherein appellant contends the Idaho court concluded the terms "residential" and "agricultural" are not synonymous. While appellants' contention might be inferred from that Idaho decision, it is necessary to point out that decision turned upon an express written prohibition against the construction of mobile homes in areas designated for farm or rural use.

The question herein really turns upon whether, under the terms of an A–2 district, operation of a dog kennel is a permitted or conditional use. The reading and interpretation of an A–2 Agricultural District neither directly nor inferentially imports authority or permission to operate a dog kennel, which as pointed out herein and as agreed to between the parties, is a commercial operation.

Point one is ruled against appellants.

■ Appellants further allege error in the trial court's conclusion that the rules and regulations of the Board were and continue to be reasonably applied to commercial dog kennel operations. The general allegation of error is set forth with greater specificity in the following subpoints:

(a) The regulations permit dog kennels only in commercially or industrially zoned districts.

(b) The regulations generally prohibit a physically separate residence in districts zoned commercially or industrially.

(c) There is uncontroverted evidence on appellants' behalf that it is necessary that someone reside on the premises where a kennel is operated.

Appellants correctly argue that the evidence is uncontroverted that someone must be present at the location of a dog kennel to provide for the necessary day-to-day care of the dogs. It is also essential that someone be present, particularly during the whelping periods, to care for and assist the female dogs. Appellants further contend that dog kennels are permitted only in commercial and industrial districts and that by the rules and regulations applicable to commercial and industrial districts, separate residential structures are prohibited. Appellants contend that since no detached residential structure is permissible within commercial and industrial districts, kennel operators are confined to operate such kennels within

---

**4.** Boone County Zoning and Subdivision Regulations were made a part of the record as Relators' Exhibit No. 1.

**5.** From Boone County Zoning and Subdivision Regulations, Section 2.

the residence or dwelling of the owner or operator.

Appellants' argument too narrowly construes the application of Section 6(B)(5) of the rules and regulations as these rules apply to a general commercial district. That particular section provides:

"(5) In Commercial Districts there may also be:

Accessory dwelling unit in floors above or attached to commercial uses for occupancy by the owner or employee."

It does not follow, as argued by appellants, that the only option available to a kennel operator is the containment of the kennel within the actual residence or dwelling place, for the regulation does not specify the form of attachment. A fair interpretation of the regulation permits the conclusion that various alternative forms of attachment are permissible and allowable to kennel operators.

The specific findings of the court numbered 9, 10 and 11 take up the questions in appellants' second alleged error and correctly resolve the issue. Those findings were as follows:

"9. The Zoning Ordinance permits a kennel to be operated in C–G General Commercial District, M–L Limited Industrial District and M–G General Industrial District [Section 5, Paragraphs A(8), (10) and (11)].

10. Accessory dwelling units for occupancy by owner or employee are permitted in Commercial Districts [Section 6B(5), Zoning Ordinance]. Dwellings for resident caretakers employed on the premises are permitted in Limited General Industrial Districts [Sections 5A(10)(e) and (11)(b), Zoning Ordinance].

11. It is neither impossible nor impractical to operate a dog kennel in Boone County, Missouri."

This court concludes that these findings were correct both in fact and upon the law regarding the rules and regulations considered herein and point two is ruled against appellants.

■ Appellants' final point concludes the trial court erred in having found that the rules and regulations of the Board permit the breeding and raising of all other animals in an A–2 district. The exception to these rules was the raising of dogs, therefore they contend such rules and regulations are contrary to § 64.855, deny them equal protection under the law and constitute special legislation. § 64.855 reads as follows:

"64.855. *Division of territory into districts—regulations to be uniform, conform to comprehensive plan.*—For any or all of the purposes of section 64.850, the unincorporated territory may be divided into districts of such number, shape and area as may be deemed best suited to carry out the purpose of sections 64.845 to 64.880 and shall be shown upon the county court's zoning plan; and within the districts the erection, construction, reconstruction, alteration, repair, relocation or maintenance of buildings or structures and use of land and lots may be regulated and restricted. All the regulations shall be uniform for each class or kind of buildings or land uses throughout each district, but the regulations in one district may differ from those in other districts. The regulations shall be made in accordance with a comprehensive zoning plan, and shall give reasonable consideration, among other things, to the then existing character of the districts, their suitability for particular uses, conservation of the value of buildings and of existing development, and encouragement of the most appropriate use of land throughout the county."

The import and application of § 64.855 must be considered in its relationship to the actual wording and definition of an A–2 district. Appellants correctly contend that by definition, an A–2 district permits the breeding and raising of livestock. Appellants' contention is correct only to a point, however, because by definition such breeding and raising of livestock must attend to agricultural activity. This is established by the definition section set forth above. It must be pointed out that the definition

section is an integral part of Section 5, Paragraph A(2) as set forth above.

A conditional use can be granted to permit the operation of a livestock sales barn and stockyard under Section 5, Paragraph A(2). The rules and regulations, however, set forth with particularity the procedure and conditions under which, if at all, such livestock operation might be permitted. This is prescribed in the administration of the rules under Section 12.

Appellants argue that since such conditional use is possible, and at no place can it be found within the rules and regulations that animals other than livestock, poultry and dogs are regulated, it must follow that the breeding and raising of nonlivestock animals are permissible in agricultural districts. Appellants further contend that by exclusion of all other animals from an A–2 district, such restriction is unreasonable as having singled out dog kennel operations.

This court has difficulty in following appellants' argument to its final conclusion. The reading of both permissive and conditional uses under an A–2 district shows that the breeding and raising of animals is limited and restricted to livestock and poultry. That there might be a granting of a conditional use for a livestock sales barn or stockyard does not support the conclusion that specific exclusion of other animals within an A–2 district is unreasonable and hence permits the breeding and raising of other animals, be they dogs or some other type of animal.

In furtherance of their argument, appellants contend such rules and regulations constitute special legislation violative of § 64.855. It is obvious from the reading of this section that local zoning authorities are *prohibited from discriminating between* classes of buildings, or structures, or uses of lands within a given district, and must follow the statutory law of the state. See also *Flora Realty & Investment Co. v. City of Ladue,* 362 Mo. 1025, 246 S.W.2d 771 (banc 1952), appeal dismissed, 344 U.S. 802, 73 S.Ct. 41, 97 L.Ed. 626 (1952) and *Allen v. Coffel,* 488 S.W.2d 671 (Mo.App.1972). Appellants contend the wording within A–2

discriminates against dogs as opposed to all other animals. This contention might be correct as a pure theoretical concept of animal versus animal, but when A–2 is weighed against the wording within § 64.-855 for purposes of zoning matters, the relationship between animal kind takes on a different perspective.

Under the provisions of A–2 the specific types of animals, to wit, livestock and poultry, are included within an A–2 district. The breeding and raising of these animals attend to farming activity or operation.

Appellants' argument leads to the assumption that dogs are incapable of classification for zoning purposes. This court cannot agree. To assume that dogs are not subject to classification when contrasted with livestock, poultry or other animal forms would be to discard all application of common understanding and accepted well-defined terminology long exchanged between the human populace when considering the topic of animals.

Discrimination and hence violation of § 64.855 might well occur if any local zoning authority were to attempt to prohibit one breed of dog from being bred or raised as contrasted with some other breed within the same district, but it does not follow that such discrimination arises between livestock and poultry contrasted with dogs or other animals under § 64.855.

A fair reading of the terms and definition of A–2 leads to the conclusion that a rational classification has been adopted for such district and applies only to livestock and poultry. Moreover, respondents herein have provided for the operation of dog kennels within prescribed districts under Section 5(A)(8) and Section 5(A)(10) of their rules and regulations.

It must be noted that the parties agree that the operation of a dog kennel is a commercial operation. It follows from the reading and interpretation of the definitions and terms of an A–2 district that the respondents have clearly established a classification of animals, specifically livestock and poultry, which are the only animals

permitted within an A–2 district. In addition, the rules and regulations herein properly provide for the classification, raising and breeding of dogs as a commercial operation clearly and indiscriminately permissible under prescribed districts. Under the evidence in this case and from the reading and interpretation of the rules and regulations referred to herein, there is nothing which suggests violation of § 64.855 or the rules enunciated in *Flora Realty & Investment Co. v. City of Ladue, supra*, and *Allen v. Coffel, supra.*

As has been pointed out, appellants cite for the court the case of *County of Ada, Board of County Com'rs v. Walter, supra*, but that case is neither binding nor determinative of the issues in the instant case. Appellants also cite the case of *Mioduszewski v. Town of Saugus*, 337 Mass. 140, 148 N.E.2d 655 (1958), which stands for the proposition that a dog kennel is a commercial and not an agricultural operation. This was never an issue in the instant case.

The court notes the case of *Schwab v. Zoning Board of Appeals of the Town of Darien*, 154 Conn. 479, 226 A.2d 506 (1967), wherein the highest court in our sister state of Connecticut declared that the role of the court is to review the legislative intent in the interpretation of zoning regulations. The court in that case was dealing with zoning restrictions providing that any use of residential property not specifically permitted by regulations is prohibited. That particular case permitted residential use and expressly prohibited the operation of dog kennels, while at the same time, such use permitted farming. The case, while not being dispositive of the instant case because of the expressed prohibition against kennel operations, clearly points out the fact that classifications of animals can be reasonably attained. The Connecticut Supreme Court went on to point out at 508, "While the dog has been domesticated, it does not, in the circumstances of the present case, meet the definition of 'domestic farm animal.'" This court is forced to reach the same conclusion and holds that no unreasonable classification was established in the instant case. Hence, dogs and the operators of dog kennels, pursuant to the definitions and terms of an A–2 district herein and the facts of this case, have not been discriminated against.

Point three is ruled against appellants.

The court is mindful that this case reflects a conflict between individual property use and the ever increasing pressures of modernization, progress or whatever other definition society wishes to ascribe to the change. The problem is one joined by the attempted uncontrolled use of private property and the restriction or limitation of such use presumed to be in the public interest as those restrictions and limitations are expressed in the statutory laws of our state and thus implemented by local ordinances, rules or regulations.

It would serve no purpose to cite the authority supportive of the principle that individual rights must give way to what is declared validly to be the greater public good or welfare. To be sure, in many instances the public good or welfare does not square with the desires and thinking of any one particular person to own and to make particular use of his or her land when that desire or thinking comes into conflict with restrictions upon use. Thus, in most instances, once the validity of the exercise of zoning authority is found to exist as it is found herein, the courts must hope the parties can, through mutual cooperation and understanding, reach an accord in the matter which under all attending circumstances will serve the goals of both parties to the best extent possible.

For the foregoing reasons, the judgment of the trial court is affirmed.

All concur.