# WILSON J. FERGUSON v. BETTIE H. GENTRY et al., Appellants.

### Division One, July 13, 1907.

1. **STATUTE: Title: Germane: Husband's "Dower": Act of 1895.** The title to the Act of 1895, giving the widower an interest in the lands of his deceased childless wife, entitled, "An Act to amend chapter 55 of the Revised Statutes of Missouri, 1889, entitled 'Dower,' by adding a new section thereto, to be known as section 4518a," does not indicate that the act is merely an amendment to the law of dower, but it says it is an amendment to chapter 55, which is "entitled 'Dower,'" and that chapter is not limited to dower so-called, that is, to the widow's common law dower, but contains sections relating to other interests of the widow in her deceased husband's estate; and while giving the husband an interest in the deceased wife's estate may not be germane to dower, it is in harmony with giving the wife an interest other than dower, and the act is not unconstitutional because of defective title. It cannot be said that the word "Dower" used in the title would or did mislead a member of the Legislature into the conclusion that the act related only to the subject of dower as that word was understood at common law.

2. ——: ——: **One Subject: Constitutional Construction.** The section of the Constitution providing that "no bill shall contain more than one subject," is mandatory and its purpose is unmistakable, but it must not be given a construction which would hamper the Legislature in a faithful and intelligent effort to embrace in one act a subject containing different features but all pertaining to the same legislative purpose.

3. **VESTED RIGHT: Wills.**    The right to dispose of one's property by will is not a vested right beyond the power of the Legislature to withdraw or limit.

4. ———: ———: **By Deed.**  The difference between the right to dispose of one's property while living, and the right to direct its course of descent after death, is well recognized; the one is a natural right, the other a creation of statute.

5. ———: **Controlling Property After Death.**  But for the Statute of Descents and Distributions and the statute giving the power to dispose of one's property by will, all property at the death of the owner would go to the State.

6. ———: ———: **Act of 1895.**  The widower's "dower" act of 1895, in one aspect may be considered as an act modifying or abridging the wife's right to dispose of her property by will; in another, it may be considered as amending the Statute of Descents and Distributions.  But in either aspect, the rights affected were within the scope of legislative control.

7. ———: **Retrospective Law: Widower's Dower Act.**  The act of 1895, giving to the widower of a deceased wife who dies leaving no children or other descendants in being capable of inheriting, one-half of all the property belonging to her at the time of her death, and prohibiting her from so disposing of her property by will as to deprive him of such interest in her estate, and leaving her free, as she prior thereto was, to dispose of her property by deed during her life, did not deprive a wife who was the owner of property and who was married prior to the act and died after it went into effect, of any vested right, and is not therefore unconstitutional as a retrospective law.  Besides, where the wife left no will, it cannot be seen how her heirs at law (brothers and sisters) are concerned in the fact that she was deprived of the power to make a will.

Appeal from Pettis Circuit Court.—*Hon. George F. Longan,* Judge.

AFFIRMED.

*W. D. Steele, N. T. Gentry, W. M. Williams* and *Geo. P. B. Jackson* for appellants.

(1)  The Act of March 2, 1895 (Laws 1895, p. 169) now section 2938, Revised Statutes 1899, is void, because the title does not express the subject of the act. Const., art. 4, sec. 28.  The act purports to be an amend-

ment of the law concerning "Dower." The legislation
in question had no possible connection with or relation
to "dower" as it had previously been understood,
whether we take the term in its plain and ordinary and
usual sense, or whether we consider it as a technical
word and construe it according to its technical import.
1 Bouvier's Law Dict.—"Dower"—p. 448; Black's Law
Dict.—"Dower"— p. 393; 10 Am. and Eng. Ency. Law
(2 Ed.), 125. This provision of the Constitution is man-
datory, and the title of the bill should so express the sub-
ject of an act in such terms that the members of the Gen-
eral Assembly and the people may not be left in doubt as
to what matter is treated of. It must not be misleading,
and should give fair notice of its contents. State ex
rel. v. Schofield, 41 Mo. 39; State v. Miller, 45 Mo. 495;
In re Goode, 3 Mo. App. 226; State v. Burgdoerfer, 107
Mo. 30; Witzman v. Railroad, 131 Mo. 618; St. Louis
v. Weitzel, 130 Mo. 616; State ex rel. v. Heege, 135 Mo.
112; State v. Tea & Coffee Co., 171 Mo. 634. (2)   As
applied to the case at bar, the Act of March 2, 1895,
is void as being retrospective legislation, and because
it violates the obligation of a contract. Const., art. 2,
sec. 15. In this case Ruby Gentry had inherited from
her father the real estate sought to be partitioned be-
fore her marriage to the plaintiff, Ferguson, and there
was vested in her all the rights incident and appurte-
nant to the fee simple title in that property with the
unlimited right of disposition. Having such vested
estate, she married Mr. Ferguson, long before the enact-
ment of 1895, which marriage contract is to be con-
strued as embodying within its terms the existing laws
of the State at the time of the marriage and as establish-
ing the rights of the parties accordingly. This marital
relation was as much a "res" in which the parties could
have and did have vested interest as was the land now
involved in this litigation. Having fixed, under the
law, these various rights prior to 1895, the act passed

in that year could not have any operation upon them, unless it is given a retroactive effect, which would render it obnoxious to the Constitution. The law was not intended to be retroactive. There is nothing in its terms which indicates that such was the intention of the Legislature. In order to be retroactive, a law must unmistakably appear in its own terms to be intended to reach back and have a retrospective effect. Leete v. Bank, 115 Mo. 184, 141 Mo. 574; Reed v. Swan, 133 Mo. 107; Bartlett v. Ball, 142 Mo. 35; Shields v. Johnson Co., 144 Mo. 82; State ex rel. v. Ziegenhein, 144 Mo. 290; Clay v. Mayr, 144 Mo. 380; Winn v. Riley, 151 Mo. 65; Cranor v. School Dist., 151 Mo. 125. But if it be construed as having been intended to affect the rights of parties previously married, and the property owned by them at the time of the marriage, then it is unconstitutional. Leete v. Bank, 115 Mo. 184, 141 Mo. 574; Bartlett v. Ball, 142 Mo. 353; McLeod v. Venable, 163 Mo. 540; Gladney v. Sydnor, 172 Mo. 318; Arnold v. Willis, 128 Mo. 150; In re Burris, 66 Mo. 442; Walton v. Fudge, 63 Mo. App. 56; State v. Julow, 129 Mo. 163. This question was not involved and was therefore not considered in the case of O'Brien v. Ash, 169 Mo. 283. In the subsequent case of Spurlock v. Burnett, 183 Mo. 524, the marriage had occurred prior to the enactment of the law, but this question was not presented nor considered, it apparently being assumed that the whole matter had been settled in the case of O'Brien v. Ash.

*Sangree & Bohling, Montgomery & Montgomery* and *Charles E. Yeater* for respondent.

(1) The Act of March 2, 1895 (sec. 2938, R. S. 1899) has been expressly held by this court to be constitutional and valid, and the court has held that the title of the act was good within the meaning of the Constitution. O'Brien v. Ash, 169 Mo. 283; Waters v. Herboth, 178 Mo. 166; Spurlock v. Burnett, 183 Mo. 524;

Gilroy v. Brady, 195 Mo. 209; State ex rel. v. Ransom, 73 Mo. 78; State v. Miller, 45 Mo. 497; State v. Doerring, 194 Mo. 409. (2) The descent and distribution of the real and personal property of a deceased intestate in this State, as well as throughout this country and England, is wholly of statutory origin, and is an artificial right subject to abolition or modification by the legislative power, and the rights of apparent or presumptive heirs do not become vested so as to inhibit legislative change thereof, until the death of such intestate. *Nemo est haeres viventis.* Chouteau v. Railroad, 122 Mo. 394; Randall v. Kreiger, 90 U. S. 148; Gladney v. Sydnor, 172 Mo. 327; Winn v. Riley, 151 Mo. 66; Hughes v. Murdock, 45 La. Ann. 935; Blackburn v. Tucker, 72 Miss. 735; Morgan v. Perry, 51 N. H. 559; Gregly v. Jackson, 38 Ark. 487; Brown v. Critchell, 110 Ind. 31; Hamilton v. Flinn, 21 Tex. 713; Richards v. Land Co., 54 Fed. 209; Donaldson v. State, 67 N. E. 1029; Lucas v. Sawyer, 17 Witherow (Iowa) 522; Gardner v. Pace, 11 S. W. 779.

VALLIANT, P. J.—This is an appeal from a decree in partition of certain real estate in Pettis county.

The petition states that Reuben J. Gentry died in 1881, seized in fee of the land in question, leaving a widow and five children, one of whom was Ruby G. Gentry, who in 1892 married the plaintiff Ferguson and died in 1900 intestate without having had issue and leaving as her heirs at law her mother, a sister and three brothers, who are the defendants. The widow's dower has been admeasured and set off to her. The petition asserts that by virtue of an act of the General Assembly approved March 2, 1895, entitled "An Act to amend chapter 55 of the Revised Statutes of Missouri, 1889, entitled 'Dower' by adding a new section thereto, to be known as section 4518a" (which is now sec. 2938, R. S. 1899), the plaintiff is entitled to one-

half the estate his wife had in her lifetime in the land in question, which was one-fifth, subject to the life estate of her mother in that part of the land set off as dower. The defendants filed a demurrer to the petition, the point of which was that the act of the General Assembly mentioned was in violation of section 28, article 4, and section 15, article 2, of the Constitution of Missouri and of section 10 of article 1, and section 1 of the 14th amendment to the Constitution of the United States. The court overruled the demurrer and defendants declining to plead further a decree was rendered adjudging that the plaintiff was entitled to the interest claimed by him in the land, defining the interests of the defendants respectively, and appointing commissioners to make the partition; from that decree the defendants have appealed.

The only questions presented for our consideration concern the validity of the Act of March 2, 1895. These questions have been considered in former cases and decided adversely to the positions appellants now take. [O'Brien v. Ash, 169 Mo. 283; Waters v. Herboth, 178 Mo. 166; Spurlock v. Burnett, 183 Mo. 524; Gilroy v. Brady, 195 Mo. 209.] But appellants have presented their views with so much force of thought and earnestness that we have again taken the questions for consideration. There are two clauses of our State constitution to which, according to the views of appellants, this statute is repugnant, to-wit: section 28, article 4: "No bill . . . shall contain more than one subject, which shall be clearly expressed in its title;" and, section 15, article 2: "That no *ex post facto* law, nor law impairing the obligation of contracts, nor retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be passed by the General Assembly." We will notice these propositions in the order named.

I. The argument of appellants is that the title to the act indicates that it is an amendment to the statute

law of dower, but that instead of relating to the subject
of dower it only essays to give an entirely new interest
to a husband in the estate of his wife, which is not ger-
mane to the subject of dower.

We do not disagree with the learned counsel in
their definition of the word "dower." In the most fre-
quent use of that word, not only in common parlance
but in law language, we mean the life estate which the
widow takes to the extent of one-third in the land owned
by her husband during coverture whereof she had not
parted with her right. If the title to this act indicated
that it was to be merely an amendment to the law of
dower the argument of appellants, which in any view
of the subject has much force, would be unanswerable.
But the title does not say that it is an amendment to
the law of dower, it says that it is an amendment to
chapter 55 which is entitled "Dower;" it directs atten-
tion to that chapter and when one comes to examine the
chapter he will see that it contains many provisions that
do not come strictly within the meaning of "dower"
as above defined.

True the chapter entitled "Dower" contains noth-
ing not relating to a widow's interest in her deceased
husband's estate, but it is not limited to dower strictly
so called. The title to the chapter is really no part of
the statute, it is a caption adopted by the committee
having charge of the publication of the revised stat-
utes. This caption "Dower" has headed the chapters
relating to the widow's interest in her deceased hus-
band's estate in every revision of our laws from 1825 to
1899, therefore we may presume that all persons fa-
miliar with our statute law, as members of the Legisla-
ture must be, know that the chapter bearing the cap-
tion "Dower" is not limited to the subject of dower
in its strict meaning, and they must also know that
the word dower has been used in every revision of our
statutes, from 1825 to the last, to designate interests

other than the interest which alone was implied by the common law in the use of that word. Since, therefore, from the beginning, our General Assembly has taken the liberty to use the word in any connection it has seen fit, how can we now say that, when the members of the General Assembly in 1895 saw the bill entitled an act to amend chapter 55, Revised Statutes 1889, entitled, "Dower" it gave them notice only that the law of dower in its original sense was to be amended? The title referred to that whole chapter and the member of the Legislature reading it was warned that legislation was proposed which would add something new to what was contained in that already comprehensive chapter.

At the time this act was passed there was and had been for many years on our statute books, section 4518 Revised Statutes 1889, as follows: "When the husband shall die without any child or other descendants in being, capable of inheriting, his widow shall be entitled: First, to all the real and personal estate which came to the husband in right of the marriage, and to all the personal property of the husband which came to his possession with the written assent of the wife, remaining undisposed of, absolutely, not subject to the payment of the husband's debts; second, to one-half of the real and personal estate belonging to the husband at the time of his death, absolutely, subject to the payment of the husband's debts."

That section was in the chapter entitled "Dower," yet it has no relation to dower in the strict sense of the word. Now suppose there had been no such section in that chapter when the General Assembly met in 1895 and suppose it had then for the first time been enacted under this title: "An act to amend chapter 55, Revised Statutes of 1889, entitled 'Dower,' by adding thereto a new section, to be known as section 4518," could it be successfully contended that the subject of that section was not sufficiently expressed in the title

to meet the requirement of the Constitution? Although that section might with propriety be said to have no relation to dower, yet it was as germane to that subject as was section 4517 in the same chapter, giving the widow a child's share of the personal property.

If section 4518 of that chapter had not before been enacted and if it could have been, without violation of the Constitution, enacted in 1895 under the title above supposed, why could not the chapter be amended under that title by adding two sections, one giving the widow that interest in her deceased husband's estate, and the other giving the widower a reciprocal interest under the same conditions in his deceased wife's estate? The only difference that we perceive is in the fact that up to that date the chapter, though not limited to dower in the strict sense, did provide only for the widow's interest, whereas the amendment under discussion takes care also of the widower when he is the bereaved one. Giving the husband an interest in the deceased wife's estate may not be germane to the subject of dower, certainly is not germane to that subject in the strict meaning of the word, but it is in harmony with the subject of giving the wife an interest, other than dower, in the deceased husband's estate.

The section of the Constitution we are considering declares: "No bill . . . shall contain more than one subject," etc. Suppose that in 1895 there had been no such provision for the wife as in fact there was under section 4518 and it had been the purpose of the Legislature then to make such provision for her and at the same time a reciprocal provision for the husband, could not such reciprocal provisions have been made in one act, entitled, for example, "An act to entitle a widow or widower to a certain share in the estate of the deceased spouse dying without leaving any child or other descendant capable of inheriting?" Can it with reason be said that an act of the General Assembly,

providing that under certain circumstances a wife dying the husband shall have such an interest in her estate or the husband dying the wife shall have a like or similar interest in his estate, would be obnoxious to the clause of our Constitution above quoted as containing two distinct subjects? We think such provisions would be germane one with the other. If we stretch the word dower to mean a wife's interest in the personal estate of her deceased husband, why can we not also apply it to an interest the husband is to have in the estate of his deceased wife, why cannot the lawmakers say that a husband may have dower in the deceased wife's estate commensurate with the wife's dower in the deceased husband's estate? In the brief of counsel for respondent we are informed that in Illinois there is a statute in these words: "The estate of curtesy is hereby abolished, and the surviving husband or wife shall be endowed of the third part of all lands whereof the deceased husband or wife was seized of an estate of inheritance." [Sec. 1, chap. 41, R. S. Ill. entitled "Dower."]

We do not underrate the importance of this clause of our Constitution; its purpose is unmistakable and its tone is mandatory, but it must not be given a construction which would hamper the Legislature in a faithful and intelligent effort to embrace in one act a subject containing different features but all pertaining to the same legislative purpose. [State v. Doerring, 194 Mo. 410.]

For the reasons above stated we do not think that the word "Dower" in the connection in which it is used in the title to the act of March 2, 1895, would mislead a member of the Legislature, or any one else whose duty it was to read and study the bill before it became a law, into the conclusion that it concerned only the subject of dower as that word was understood at common law, and since section 4518 and the new section added

by that act confer reciprocal rights of the same character on husband and wife we see no reason why they should not be grouped in the same chapter.

II. Is the statute in question as applied to the facts of this case in conflict with that clause of our Constitution which forbids the General Assembly passing an act retrospective in its operation? Of course the act is not designed to confer a right on a surviving husband in the estate of his deceased wife who died before the enactment of the statute, because that would certainly be a retrospective effect, divesting titles that had already vested. Its aim was to confer on a husband whose wife should thereafter die an interest in her estate which the law before existing had not conferred, and to that extent it was clearly prospective only. But the point is urged that here the husband and wife were married before the statute was enacted and the wife already owned this land at the time of her marriage, that she then had the right to dispose of it, not only by deed, which this statute left her, but also by will, which this statute took away from her, and to the extent that she was deprived of the power of disposal by will the statute is retrospctive in its operation.

If the wife in this case had left a will devising this land to these defendants we would have a more concrete proposition for discussion. But she left no will, these defendants are here claiming only as heirs at law, then how are they concerned in the fact that she was deprived of the power to make a will? Their rights are exactly the same as they would have been if she had had a right to make a will but died intestate. If she had made a will it would not necessarily have been in favor of these defendants.

Counsel rely on Leete v. Bank, 115 Mo. 184, to sustain their theory of the retrospective aspect of this statute. But the main fact on which that case rested was that the husband had acquired a vested right in the

wife's choses in action before the enactment of the statute and the point decided was that the statute could not disturb that vested right. The defendant bank was there claiming title to the property by assignment from the husband. But here the defendants are not claiming any title derived from what they say was a vested right, but are claiming only as heirs and they are challenging the validity of the statute on the ground that it deprived their sister of a right which she never attempted to exercise and which if she had exercised might have destroyed their right of inheritance entirely.

It is argued that since there are other provisions of the Constitution that protect vested rights, the clause which prohibits the enactment of a statue retrospective in its operation must have been intended to have some farther limitation on legislative power, and it is pointed out in the brief for defendants that a thought of that kind is expressed in the opinion in Leete v. Bank. The case at bar does not call for a decision on that point, neither did the Leete case. In the case at bar the force of the argument for defendants is that this statute cannot be applied to the facts of this case because they say to do so would be to disturb a vested right; there is no other theory presented in the brief on this phase of the case.

If it be conceded that these defendants are in a position to complain of the statute for depriving Mrs. Ferguson of a right which she possessed then it becomes important to consider the nature of that right. Of what right did this statute deprive the plaintiff's wife? Not the right of disposing of her property by deed, for that was left unimpaired, but only the right of disposing of a part of it by will under certain circumstances. Is the right to dispose of one's property by will a vested right beyond the power of the Legislature to withdraw or limit?

In United States v. Perkins, 163 U. S. 1. c. 627, the

court said: "While the laws of all civilized States rec-
ognize in every citizen the absolute right to his own
earnings, and to the enjoyment of his own property,
and the increase thereof, during his life, except so far
as the State may require him to contribute his share
for public expenses, the right to dispose of his property
by will has always been considered purely a creature
of statute and within legislative control.''

The difference between the right to dispose of one's
property while living and the right to direct its course
of descent after death is well recognized, the one is a
natural right, the other a creation of statute. But for
the statute of descents and distribution and the stat-
ute giving the power to dispose of one's property by
will, the property at the death of the owner would go
to the State. In some states the power to dispose of
one's property by will is limited so that a man may not
entirely disinherit his offspring. If our General As-
sembly should at its next session enact a statute repeal-
ing the present law regarding wills, limiting the pow-
er of disposal by will to one-half the testator's estate,
and directing a course of descent for the other half,
there could be found nothing in our Constitution to
forbid it, and it would be as effective in relation to
property that the testator owned before the enactment
of such a law as that acquired afterwards. And so it
is in reference to the statutes of descents and distribu-
tions. The law now is that if a man die leaving no child
or other descendant his property shall descend to his
father, mother, brothers and sisters in equal parts, but
there is nothing to prevent the next General Assembly
from amending that statute and limiting the course of
descent in such case to the parents alone or to the broth-
ers and sisters alone, and such an act would apply as
well to property the intestate owned before the new
statute as to that which he might thereafter acquire.

In speaking of dower in Randall v. Kreiger, 90

U. S. 1. c. 148, the court said: ''It is not a natural right. It is wholly given by law, and the power that gave it may increase, diminish, or otherwise alter it, or wholly take it away. It is upon the same footing with the expectancy of heirs, apparent or presumptive, before the death of the ancestor. Until that event occurs the law of descent and distribution may be moulded according to the will of the Legislature. Laws upon those subjects in such cases take effect at once, in all respects as if they had preceded the birth of such person then living. Upon the death of the husband and the ancestor the rights of the widow and the heirs become fixed and vested. Thereafter their titles respectively rest upon the same foundation, and are protected by the same sanctions as other rights of property.''

This court has held that the right of dower is a mere expectancy until the death of the husband and while so may be modified or entirely abolished by the Legislature. [Bartlett v. Ball, 142 Mo. 28, 1. c. 36; Venable v. Railroad, 112 Mo. 103, 1. c. 112.]

In United States v. Fox, 94 U. S. 1. c. 321, the court said: ''Statutes of wills, as is justly observed by the Court of Appeals, are enabling acts, and prior to the statute of 32 Hen. VIII there was no general power at common law to devise lands. . . . Every person must, therefore, devise his lands in that State within the limitations of the statute or he cannot devise them at all.''

The act of March 2, 1895, in one aspect may be considered as an act modifying or abridging the wife's right to dispose of her property by will, in another aspect it may be considered as amending the statute of descents, but in either aspect the rights affected were within the scope of legislative control.

In the demurrer to the petition filed by the defendants, besides the clauses of our State constitution, are certain clauses of our Federal constitution which it is

said this statute violates, but in their brief the appellants have discussed the statute in its relation to the State constitution only, and we presume therefore they do not rely on that part of their demurrer that refers to the Federal constitution.

Although the learned counsel for appellants have made a strong argument in support of their contention that the act of March 2, 1895, is unconstitutional we are satisfied that our opinions of this subject as expressed in the cases above mentioned viz: O'Brien v. Ash, 169 Mo. 283; Waters v. Herboth, 178 Mo. 166; Spurlock v. Burnett, 183 Mo. 524; and Gilroy v. Brady, 195 Mo. 209, are correct.

The judgment is affirmed.

All concur, except *Lamm, J.,* not sitting, having been of counsel.