PHILLIPS PIPE LINE COMPANY, A CORPORATION, RESPONDENT, v. EDWARD O. BRANDSTETTER AND JEANETTE BRANDSTETTER, HIS WIFE, APPELLANTS.—263 SW 2d 880.

St. Louis Court of Appeals. Opinion filed January 19, 1954.

Appellants' motion for rehearing overruled February 12, 1954.

*Robert A. Roessel, Keith M. Brownell,* and *Ruth Boxdorfer* for appellants.

1140

*C. Kenneth Thies; Kerth, Thies & Schreiber; Rayburn L. Foster, Harry D. Turner,* and *Wm. J. Zeman* for respondents.

ARONSON, Spec. J.—This case has come to us by transfer from the Supreme Court for reasons set forth in an opinion reported at 254 S.W. 2d 636. Therein Judge Westhues epitomized the nature of the case as follows:

"This is a condemnation suit filed by respondent, Phillips Pipe Line Company, against appellants, Edward O. Brandstetter and his wife, to condemn land for the purpose of laying a pipe line. Commissioners were appointed to assess the damages; exceptions were filed to the report of the commissioners but these were later dismissed. In their answer the landowners, appellants here, challenged the right and power of respondent to condemn the land. Appellants' contention is that Section 523.010 RSMo 1949, V.A. M.S., does not authorize pipe line companies to institute condemnation proceedings. The trial court held that the respondent did have the right to condemn land and entered a judgment accordingly. The landowners appealed.

Plaintiff is a corporation which was organized in Delaware as "Independent Pipe Line Company," its name later changed to "Standish Pipe Line Company," and in 1948 again changed "Phillips Pipe Line

Company.'' It is a separate and distinct corporate entity from an earlier Phillips Pipe Line Company which in 1940 had filed an affidavit of retirement and dissolution with the Secretary of State of Missouri.

The earlier Phillips Pipe Line Company had in 1933 instituted a condemnation proceeding in the Circuit Court of St. Louis County, in which Edward O. Brandstetter and wife were defendants, wherein it secured a decree granting it a 30 foot right of way for the laying of an 8 inch pipe line, which pipe line was thereafter laid across defendants' farm property. In 1940, the said earlier Phillips Pipe Line Company transferred all its assets, including the said pipe line, to Phillips Petroleum Company. On June 30, 1951, the pipe line properties were transferred by Phillips Petroleum Company to the present plaintiff, so that plaintiff thereby became owner of the perpetual easement and right-of-way which were granted to the earlier corporation of the same name in the condemnation suit of 1933, as well as of the pipe line itself. It may be noted that this pipe line is part of a system which runs from Borger, Texas, through parts of Oklahoma, Kansas, Missouri and Illinois, to East Chicago, Indiana. It has one delivery point in Missouri, near Jefferson City; no points of origin in this state; there is another delivery station at East St. Louis, Illinois.

In the present proceeding plaintiff seeks condemnation of a right of way for the purpose of laying a second pipe line, $10\frac{3}{4}$ inches in diameter, parallel to the older pipe line. In the testimony, its plan was compared to double-tracking a railroad line where only a single track had been laid before. The new pipe line is to be located 8 feet north of the old, in the center of a new 33 foot right-of-way, and thus the two rights-of-way overlap considerably; only $9\frac{1}{2}$ feet of the new right-of-way extends beyond the limits of the earlier right-of-way, and $23\frac{1}{2}$ feet overlaps the earlier right-of-way.

Three points are presented by defendants: 1, that a pipe line company is not granted the right of eminent domain by Sec. 523.010, R.S. Mo. 1949, V.A.M.S.; 2, that to allow plaintiff to determine the ''necessity'' of its new pipe line will deprive defendants of rights without due process of law; and 3, that no ''public use'' was shown, to justify the decree herein.

This case having been tried by the court below, without a jury, we review it both on the law and the facts. Sec. 510.310, R. S. Mo. 1949, V.A.M.S. Defendants offered no evidence, so that plaintiff's evidence was undisputed. We shall make further reference to the evidence below to such extent as seems necessary, as we discuss the issues.

With respect to the first issue, as to whether a pipe line company has the right to condemn rights-of-way in Missouri, defendants contend that Sec. 523.010 R. S. Mo. 1949, V.A.M.S. is purely procedural and grants no substantive rights, while plaintiff asserts that said

statute does confer a substantive right of condemnation upon "* * * any oil, pipe line or gas corporation engaged in the business of transporting or carrying oil or gas by means of pipes or pipe lines laid underneath the surface of the ground * * *," and that this construction has been acted upon for many years in many cases by the bar of this state and had been expressed, as a matter of dictum, by our Supreme Court in a few cases, and thereafter the legislature made no amendments to indicate its unwillingness to accept the actual construction placed upon its statutory enactment.

Section 523.010, R.S. Mo. 1949, V.A.M.S., (previously Sec. 1504, R.S. Mo. 1939 and Sec. 1340, R. S. Mo. 1929) so far as pertinent here, reads as follows:

"In case land, or other property is sought to be appropriated by any * * * oil, pipe line or gas corporation engaged in the business of transporting or carrying oil or gas by means of pipes or pipe lines laid underneath the surface of the ground, * * * for public use, and such corporation and the owners cannot agree upon the proper compensation to be paid, * * * such corporation may apply to the circuit court of the county of this state where said land or any part thereof lies, or the judge thereof in vacation, by petition setting forth the general directions in which it is desired to construct their * * * oil, pipe or gas line over or underneath the surface of such lands, a description of the real estate or other property, which the company seeks to acquire; the names of the owners thereof, * * * and praying the appointment of three disinterested freeholders, as commissioners, or a jury, to assess the damages which such owners may severally sustain in consequence of the establishment, erection and maintenance of such * * * oil, pipe line or gas line over or underneath the surface of such lands; * * * * *."

Previous to 1919, the condemnation statute contained no reference to oil, pipe line or gas companies. The amending law introducing these groups of corporations into the statute was enacted by the 50th General Assembly and was approved May 7, 1919, with an emergency clause. (Laws of 1919, pp. 207-9.) The caption of the legislative enactment described it as an Act to amend Sec. 2360, R.S. Mo. 1909, *authorizing* lands to be condemned for electric corporations "so as to *authorize* land to be condemned by oil, pipe line or gas companies for the purpose of transporting and carrying oil and gas by means of pipes and pipe lines underneath the surface of the ground." (Italics ours.) The emergency clause of the Act declares the basis for immediate need of the amendment to be the incompleteness of the pre-existing statute "in that it does not confer the power of eminent domain upon oil, pipe-line and gas companies" in this state. It would appear obvious that the Legislature intended by its action to remedy the situation by conferring the power.

To construe the statute as granting merely procedural rights would be to ascribe to the General Assembly the purpose of creating a procedure while knowing that there was no right and intentionally refraining from creating a right to use the newly-created procedure, which surely would have been a futile and unnecessary action. The emergency clause negatives any such purpose and our lawmakers must rationally have meant to create both substantive and procedural rights. Defendants insist that the rule of strict construction be applied. Such rule cannot blind us to the express inclusion of pipe line companies. Strict construction does not mean a strained narrow interpretation of language. It does not require that there be two statutes, one for substantive right and one for procedural. One statutory section is sufficient.

The fact that Chapter 523 is labeled ''Condemnation Proceedings'' does not mean that it is wholly procedural. The word ''proceedings'' must not be tortured into reading ''procedures.'' ''Condemnation proceedings'' as used as a chapter heading signifies no more than ''condemnation actions'' would mean.

Defendants in their argument stress the language of the section-heading which now appears with Sec. 523.010 R. S. Mo. 1949, V.A. M.S.: ''Lands may be condemned, when-petition-parties.'' When the 1919 amendment was adopted the section-caption read: Lands may be condemned, when.'' We think defendants attribute excessive significance to the heading of the section as indicative of only procedural rights. These headings are usually the work of revision committees, and are not truly parts of the statute. They are surely of less importance than is the preamble of an amending act, in disclosing legislative intent.

From State v. Maurer, 255 Mo. 152, l.c. 160, 164 S.W. 551, 552, we quote the following:

''The headings of chapters, articles, or sections are not to be considered in construing our statutes; these indicia are mere arbitrary designations inserted for convenience of reference by clerks or revisers, who have no legislative authority, and are therefore powerless to lessen or expand the letter or meaning of the law. Ferguson v. Gentry, 206 Mo. 189, 195, 104 S.W. 104; State v. Doerring, 194 Mo. 398, 414, 92 S.W. 489; Logan v. Fidelity Co., 146 Mo. 114, 122, 47 S.W. 948; Huff v. Alsup, 64 Mo. 51.''

See also Southwestern Bell Telephone Company v. Drainage District No. 5 of Pemiscot Co., 215 Mo. App. 456, 247 S.W. 494, 495.

On the other hand, the title of a statute, being written by the General Assembly, can properly be resorted to, in aid of its interpretation, if ambiguous. In re Graves, 325 Mo. 888, 30 S.W. 2d 149; A. J. Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S.W. 2d 184.

The designation of pipe-line companies within the classes of corporations which may bring proceedings such as are outlined in Section 523.010 R.S. Mo. 1949, V.A.M.S., is a conferral of both substantive and procedural rights upon such companies. This includes foreign as well as domestic corporations. Southern Illinois & Mo. Bridge Co. v. Stone, 174 Mo. 1, 73 S.W. 453.

Our conclusion is buttressed by practical construction since 1919. We are called upon to construe the statute one-third of a century after its enactment, and must take into consideration the comments which have been made by courts (conceding that none have ruled this precise issue), as well as the practical use made of the statute.

By way of dictum, our Supreme Court said in State ex rel. Cities Service Gas Co. v. Public Service Commission, 337 Mo. 809, l.c. 825, 85 S.W. 2d 890, l.c. 898:

"The Pipe Line is a foreign corporation licensed to do business in this state and secured a permit from the Commission to lay pipe lines in this state. It had the same powers as a domestic corporation. * * * *under section 1340, Rev. St. Mo. 1929 * * * *, it had the power to condemn land to lay pipe lines if for public use.*" (Italics ours.)

Again in State v. Shell Pipe Line Corp., 345 Mo. 1222, l.c. 1240, 139 S.W. 2d 510, l.c. 519, 520, it was said:

"It is conceded that it has on several occasions exercised and may again exercise the right of eminent domain in order to obtain or facilitate the obtaining of rights of way for its interstate pipe lines. In State ex rel. Cities Service Gas Co. v. Public Service Comm., supra, the plaintiff Pipe Line Company was a foreign corporation licensed to do business in this state. The court held that it had the right to condemn land and to lay pipe lines, if for public use, without thus becoming liable for the franchise tax, citing and quoting from Ozark Pipe Line Corporation v. Monier, supra, * * *."

In Ozark Pipe Line Corp. v. Monier, 266 U.S. 555, 45 Sup. Ct. 184, 185, the Supreme Court of the United States (in 1925) after noting that plaintiff obtained a Missouri license to do business in transporting petroleum by pipe line, said: It thereby acquired the right of eminent domain under the laws of the state."

Just one year ago, in Beetschen v. Shell Pipe Line Corp., Mo., 253 S.W. 2d 785, l.c. 787, our Supreme Court said:

"* * * the basic fact is that it is the corporate entity, the Shell Pipe Line Corporation, that has been invested with the right to exercise the power of eminent domain Section 523.010 RSMo 1949, V.A.M.S. By reason of that fact the condemnation proceeding was instituted, amended and prosecuted to a conclusion in the name of the Shell Pipe Line Corporation and the title, right or interest condemned and acquired by reason of that proceeding,

the specifically limited subsurface easement, vested in the Shell Pipe Line Corporation.''

The last cited case was first ruled by this court, which reached the same conclusion but transferred the case to the Supreme Court because of the general interest in and public importance of the question involved. Beetschen v. Shell Pipe Line Corp., Mo. App., 248 S.W. 2d 66. In its opinion this court had said: ''The statute, R.S. Mo. 1949, Chapter 523, § 523.010 et seq., gives the corporation the right to acquire rights in the property of private citizens by instituting condemnation proceedings according to a prescribed formula.''

Thus on four distinct occasions in Missouri judicial comments have been made, although not directly necessary, to the effect that Sec. 523.010 R. S. Mo. 1949, V.A.M.S. has granted a substantive right of condemnation to pipe line companies. The earlier two of the four Missouri cases just cited are especially significant because after those opinions were published (in 1935 and 1940, respectively,) there was no effort, in any of the several sessions of the General Assembly subsequently convened, to amend the law or to express any other or different legislative intent, not in accord with said judicial dicta. See Willott v. Willott, 333 Mo. 896, 62 S.W. 2d 1084, l.c. 85-6; Curtis Pub. Co. v. Bates, Mo., 250 S.W. 2d 521; Robertson v. Manufacturing Lumbermen's Underwriters, 346 Mo. 1103, 145 S.W. 2d 134.

Practical construction of the statute is also reflected by the many proceedings which over the years have been instituted by pipe-line companies seeking decrees in condemnation, and carried to successful conclusions. See Jackson v. St. Louis-San Francisco Ry. Co., 357 Mo. 998, 211 S.W. 2d 931, l.c. 937. Instances of some such cases which have reached appellate courts, without challenge of the right of eminent domain are cited in the footnote.[1]

As a further contention, plaintiff has urged that the issue of its right to institute a condemnation proceeding is res judicata, by reason of the favorable result of the earlier condemnation action. In view of the conclusion we have reached on the merits of the controversy concerning plaintiff's rights under the statute, we deem it unnecessary to rule this contention.

Having determined that the statute, §523.01 R. S. Mo. 1949, V.A. M.S., must be construed as having granted both substantive and procedural rights to plaintiff, we turn next to the third, rather than the second, of the questions presented by defendants, because we think it follows in logical order, to-wit, whether an intended ''public use''

---

[1]Prairie Pipe Line Company v. Shipp et al., 305 Mo. 663, 267 S.W. 647; Texas Empire Pipe Line Co. v. Stewart (K. C. Ct. of App., 1931) Mo. App., 35 S.W. 2d 627; Nifong et al. v. Texas Empire Pipe Line Company (K. C. Ct. of App. 1931) 225 Mo. App. 1134, 40 S.W. 2d 522; Shell Pipe Line Corporation v. Woolfolk (Sup. Ct. of Mo. 1932) 331 Mo. 410, 53 S.W. 2d 917; Cities Service Gas Co. v. Peak (K. C. Ct. of App. 1932) 227 Mo. 515, 54 S.W. 2d 482.

was shown. The statute authorizes these proceedings to be instituted when land is sought to be appropriated "for public use." The 1945 Constitution of Missouri, Art. 1, Sec. 28, provides "* * * that when an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be judicially determined without regard to any legislative declaration that the use is public."

It would unduly prolong this opinion to comment upon each and every contention made by defendants in their brief, but the burden of their argument is that plaintiff is the wholly-owned subsidiary of Phillips Petroleum Company and that the great preponderance of its business consists of carrying the products of Phillips Petroleum Company, wherefore it is contended that the proposed use of the condemned right of way will be a private use, rather than a public use.

The facts that plaintiff is a subsidiary of an oil company and that most of its business is with that company do not dispose of the matter, and do not conclusively demonstrate that a "private use" is involved. Kansas & Texas Coal Ry. Co. v. Northwestern Coal & Min. Co., 161 Mo. 288, 61 S.W. 684; State v. Shell Pipe Line Co., 345 Mo. 1222, 139 S.W. 2d 510.

Public use here means public benefit. As to a company engaged in transporting oil and related liquid commodities by pipe line it must mean a willingness to accept the trade of the general public, as distinguished from a refusal to do business with any but a selected or limited clientele. Of course, the average citizen would have no occasion to engage in business transactions with a pipe line company; its facilities would be of aid only to those who might be in the oil business.

"It is not essential that the entire community, nor even any considerable portion, should directly enjoy or participate in an improvement in order to constitute a public use," said the Supreme Court of the United States in Rindge Co. v. Los Angeles County, 262 U.S. 700, 67 L. Ed. 1186, 43 S. Ct. 689, 692. Further, the same case holds that not only present demands of the public, but those reasonably to be anticipated in the future, are to be considered. See also In re Kansas City Ordinance No. 39946, 298 Mo. 569, 252 S.W. 404, 408.

There was evidence in this case, and the learned trial judge was justified in finding, that plaintiff carried some products of Tidewater Oil Co., Skelly Oil Co., Great Lakes Pipe Line Co., Continental Oil Co., Cities Service Oil Co., and many other concerns, in addition to Phillips Petroleum Co. It holds itself out to the public as a common carrier. All its rates were in accordance with tariffs filed with the Interstate Commerce Commission, which has officially described it as a common carrier and it regularly files reports with that Commission. Tariffs and reports were in evidence. During World War II it carried a quantity (50,000 barrels per month) of aviation fuel through its pipe line to East St. Louis, Illinois, for Army Air Force use, at

regular tariff rates. It carried no products for itself, or, to reverse the expression, it owned nothing that it transported. It does no intra-state business.

One of the exhibits in evidence, a report to the Interstate Commerce Commission showed that the 8 inch pipe line carried 21,390,405 barrels of gasoline and other oil products (a barrel contains 42 gallons) in 1951, as compared to 16,161,527 barrels in 1950. The original pipe line was estimated to be inadequate to the extent of 10,000 barrels per day to transport the volume of merchandise offered by shippers. Much "looping" or double-tracking of the system had been accomplished, and plaintiff's witness said this was needed throughout the entire line.

The use of the original pipe line operated by plaintiff was such as should be regarded as a public benefit; and the trial court properly ruled that the contemplated use of the expanded pipe-line system would constitute a public use of the new right-of-way sought to be condemned. 29 C.J.S. 845.

We come now to the remaining question, being defendants' argument that due process of law was not accorded them in determining the "necessity" of the present exercise of right of eminent domain. Both sides of the case agree that whereas the matter of "public use" is a judicial question (and the Missouri Constitution so prescribes), the matter of necessity is called a political question, or a legislative matter. As said in American Telephone & Telegraph Co. of Missouri v. St. Louis, I. M. & S. Ry. Co., 202 Mo. 656, l.c. 677, 101 S. W. 576, 582:

"Going one step more, who is to determine the necessity, expediency, and propriety of exercising this delegated right of eminent domain? Is it the courts, or the donee of this power? It has been held that with the express grant of power to exercise the right of eminent domain there necessarily went the right to determine the foregoing questions, they being essentially political and not judicial. Simpson v. Kansas City, 111 Mo., loc. cit. 242, 20 S. W. 38; State ex rel. v. Engelmann, 106 Mo., loc. cit. 632, 17 S.W. 759."

Recently in Bowman v. Kansas City et al., Mo., 233 S.W. 2d 26, l.c. 29, Judge Dalton, for our Supreme Court en banc, wrote:

"The necessity and expediency of the proposed taking were legislative and political, not judicial questions and the evidence offered and excluded in so far as it related to such questions, was properly excluded. 'In such a case, it is well settled that the utility of the proposed improvement, the extent of the public necessity for its construction, the expediency of constructing it, the suitableness of the location selected for its site are all questions exclusively for the legislature to determine, and the courts have no power to interfere or to substitute their own views for

those of the representatives of the people.' 18 Am. Jur. 731, Eminent Domain, Sec. 105; 29 C.J.S., Eminent Domain, §87, p. 878."

As we have read the cases cited by counsel and many more, it has appeared that the word "necessity" has been used in the cases in many different senses, and that it does not always have the same meaning. Sometimes it involves a specific statutory definition, as in connection with "public convenience and necessity." At times it seems to be bound up in the concept of "public use," since condemnation of unnecessarily large properties may go beyond public use into private use. Defendants here would seem to want us to apply a stringent definition, such as some condition imperatively demanding relief.

Defendants' contention is that since "necessity" was left to plaintiff to determine, by the failure of the legislature to require its determination by another board or officer, they have not been accorded due process of law. Is due process involved in the decision of whether a condemnation proceeding is necessary and should be commenced? Is necessity a separate step (apart from public use) in the process of asserting the right of eminent domain?

It is to be noted that neither Section 523.010 nor the Constitution of Missouri in Article 1, Sec. 28 mentions the element of "necessity."

The cited statute delegates a part of the State's power of eminent domain. The legislature can exercise the power or can delegate it to individual enterprises, having full discretion in the selection of agents to exercise the power. 29 C. J. S. 805-6. Delegation can be to private corporations, 29 C. J. S. 811 ff. and even to individuals. 29 C. J. S. 816. See also Southern Illinois & Missouri Bridge Co. v. Stone, 174 Mo. 1, 73 S.W. 453, 6.

Legislatures have discretion as to what, if any, regulations should be established to secure a proper exercise of the delegated power. 29 C. J. S. 881. They may provide few or no regulations.

"The legislature may delegate the power of determining the necessity of exercising the power of eminent domain to public officers or boards, or to private corporations vested with the power of eminent domain, and in the absence of any statutory provision submitting the matter to a court or jury the decision of the question of necessity lies with the body of individuals to whom the state has delegated the authority to take. Generally, a determination by the grantee of the power is conclusive and is not subject to judicial review, in the absence of fraud, bad faith, or clear abuse of discretion." 29 C. J. S. 882-3.

Likewise, the necessity of taking particular property and details of selection and location may be determined by the grantee of the power of eminent domain. 29 C. J. S. 884. See also St. Louis, H.

& K.C. Ry Co. v. Hannibal Union Depot Co., 125 Mo. 82, 28 S.W. 483, 485, 486.

Thus, it would appear that unless the statute (or the state Constitution) makes "necessity" an element on which the power to condemn for public use must rest, there is no room for the argument that it is a step as to which due process must be accorded.

We consider the recent decision of the Supreme Court in Board of Regents for Northeast Missouri State Teachers College v. Palmer et al., 356 Mo. 946, l.c. 951, 204 S.W. 2d 291, l.c. 294, is illuminating here. The Court said:

"In this connection it is urged that there was no showing of any necessity for the taking of the land or that it is being taken for any public use. The point seems to be that the college owns twenty-five acres of land, eight of which are occupied by an athletic field, adjoining the appellants' tract and that it is therefore not necessary to condemn this land. But, once the power of eminent domain is conferred upon an agency of the state by the General Assembly the grant of the power carries with it the right to decide the essentially political questions of the necessity for its exercise as well as the expediency and propriety of doing so. City of Kirkwood v. Venable, 351 Mo. 460, 173 S.W. 2d 8; American Telephone & Telegraph Co. v. St. Louis I. M. & S. R. Co., 202 Mo. 656, 101 S.W. 576. The only question for the courts in this connection is 'whether the contemplated use be public.' "

There is generally no requirement of a hearing in a legislative determination, in order to satisfy requirements of "due process"; and when legislative authority is delegated, the exercise thereof by the agent of the legislature is not subject to the requirement of a hearing, unless the legislature has declared such to be a condition or regulation prerequisite to action. In this instance, the General Assembly has made no such requirement.

It is for the Legislature, not the courts, to require a finding of a necessity for condemnation by a pipe line company, other than by such a company itself. Perhaps the legislature believed that the inevitably high cost of construction of a pipeline (usually extending, as here, for hundreds of miles) was a sufficient safeguard against unnecessary pipe-line construction. Regardless of its reason, our lawmakers gave the power of eminent domain to such companies whenever land 'is sought to be appropriated" and only they can make a change in the law to require a "necessity."

We refer those who might be interested further to Sections 105-107 of the Title Eminent Domain in 18 Am. Jur. 731-4, except to quote from Sec. 106, these words: "Where the intended use is public, the necessity and expediency of the taking may be determined by such agency and in such mode as the state may designate. They are legislative questions no matter who may be charged with their deci-

sion, and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment.'' Again in § 334, 18 Am. Jur. 976, it is said: ''* * * it is ordinarily the rule that if the intended use is public, the necessity and expediency of the taking may be determined by such agency and in such mode as the state may designate. They are legislative questions no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment, or Sec. 10 of Art. 1, of the Federal Constitution.''

Of course, the exercise of the delegated right to determine the necessity of a taking of property for public use under the power of eminent domain is subject to judicial action to prevent an abuse of discretion or for fraud. However, in this case, there is no such exceptional circumstance. The effort to place a succession of loopings or an additional pipe line immediately adjacent to a single pipe-line could not well be an improper use of discretion.

We find no error in the judgment of the Circuit Court, and accordingly the same is affirmed. *Anderson, P. J.,* and *Bennick, J.,* concur.