SOUTHWESTERN BELL TELEPHONE COMPANY, Plaintiff-Appellant,

v.

C. R. NEWINGHAM and Ann Newingham, his Wife, and E. H. Mallett and Mildred Mallett, husband and wife, Robert A. Smith, Trustee, and John Hancock Mutual Life Insurance Company, Defendants-Respondents.

No. 8373.

Springfield Court of Appeals.

Missouri.

Jan. 20, 1965.

John Mohler, Leo Eickhoff, and Donald King, St. Louis, Harry C. Blanton and Bernard C. Rice, Blanton, Blanton & Rice, Sikeston, for plaintiff-appellant.

Harry H. Bock, Bock & Jones, New Madrid, for defendants-respondents.

RUARK, Presiding Justice.

This case involves the question of whether or not a telephone company may condemn for the purpose of laying underground cables. The Southwestern Bell Telephone Company (hereinafter referred to as the Company) filed petition against Newingham and others (hereinafter called Owners) to appropriate an easement one rod in width across Owners' land in order to construct, operate and maintain an underground communications system, consisting of underground cables, wires, conduits, and other necessary appurtenances below the surface, with right to clear and maintain the strip, both surface and sub-surface, of trees, roots, and other obstructions. The petition did not specify or restrict the depth (or shallowness) of the contemplated cables below the surface. Owners filed motion to dismiss based on grounds that the Company had no authority under the laws of the State of Missouri to condemn easements across private property for underground cables or wires. The motion was sustained and the Company appealed.

Company contends it has the power of eminent domain for underground installations under the provisions of Section 523.-010 RSMo 1959, V.A.M.S. (the "general" condemnation statute) and buttresses its contention by the fact that Sections 392.-130 and 392.200 (of the chapter regulating telephone and telegraph companies) require the company to furnish sufficient and adequate facilities to meet the communication needs of the public. Owners contend that Section 392.100 of the chapter

relating to telephone and telegraph companies limits the right of appropriation therein granted to poles, piers, abutments, wires and other necessary fixtures over or above the ground; that this is demonstrated by the provisions of Section 392.080, which expressly give telephone and telegraph companies the right to put such installations along, across, or *under public roads, streets, and waters;* and that the appropriation of the sub-surface for wires and cables places a greater burden on private property than is contemplated by Section 392.100.

■ Subject to constitutional limitations, the discretion to exercise the sovereign power of eminent domain is in the Legislature and those to whom it delegates such function by statute.[1] Since it is not disputed that a telephone company is engaged in a public service and the property taken by it for telephone line communications is for a public use (American Tel. & Tel. Co. of Missouri v. St. Louis & I. M. & S. Ry. Co., 202 Mo. 656, 101 S.W. 576, 583), our sole question is did the Legislature delegate to the telephone company the right to appropriate the sub-surface for such use?

■ The Respondents contend, and we think correctly, that the exercise of eminent domain is in derogation of the right of the citizen; that a statute delegating that power must be strictly construed,[2] and the person or body claiming the right to exercise such delegated power must be able to point to the statute which either expressly or by necessary implication confers that right.[3] But the rule of "strict

1. 18 Am.Jur., Eminent Domain, § 9, p. 637; State ex rel. Coffman v. Crain, Mo. App., 308 S.W.2d 451, 455; State ex rel. State Highway Commission v. Galloway, Mo.App., 292 S.W.2d 904, Mo., 300 S.W. 2d 480; Chicago B. & Q. R. Co. v. Mc-Cooey, 273 Mo. 29, 200 S.W. 59, 61.

2. Lewis, Eminent Domain (3rd Ed.), § 388, p. 708; State ex rel. Missouri Water Co. v. Bostian, 365 Mo. 228, 280 S.W.2d 663, 666; City of Caruthersville v. Faris,

237 Mo.App. 605, 146 S.W.2d 80, 86; Houck v. Little River Drainage Dist., 343 Mo. 28, 119 S.W.2d 826, 831.

3. 3 Sutherland, Statutory Construction (3rd Ed.) § 6504, p. 249; 29 C.J.S. Eminent Domain § 22, p. 806; State ex rel. Highway Commission v. Gordon, 327 Mo. 160, 36 S.W.2d 105, 106; see Priest v. Capitain, 236 Mo. 446, 139 S.W. 204, 209.

construction" has no definite or precise meaning. It has only relative application. It is not the opposite of liberal construction, and it does not require such a strained or narrow interpretation of the language as to defeat the object.[4] The primary purpose of all statutory construction is to determine the intent of the Legislature;[5] and all such rules are but vassals to the liege sovereign intent. See cases West's Missouri Digest, Statutes, ▮▮▮▮▮

The statutes involved have ancestral kinship. As to R.S. 392.100, V.A.M.S.: Chapter 72, page 43, Laws of 1866, dealt with magnetic telegraph companies. Section 6 of such Act authorized them to enter upon land of private persons in order to make surveys and to appropriate "so much of said lands as may be necessary to erect such poles, piers, abutments, wires and other necessary fixtures" as might from time to time be deemed necessary. The wording of such Act has come substantially unchanged down to 392.100, except that telephone companies were added (see Sections 874 and 886, R.S.1879). Section 5 of the 1866 Act granted to companies the right to set their poles, piers, abutments, wires and other fixtures along, upon, and across any of the public roads, streets, and waters of this state in such manner as not to incommode the public. By Section 2721, R.S.1889, such companies were granted the additional privilege of placing their wires, poles and other fixtures *underneath* such public roads, streets, and waters, and that, in substance, is the provision of our present R.S. 392.080, V.A.M.S.

In the Laws of 1866, in Chapter 73, page 47, immediately following the chapter dealing with telegraph companies, provision was made for proceedings for "the appropriation and valuation of lands taken for telegraph, macadamized, graded, plank or railroad purposes." Section 1 of said Act provided for the determination of damages caused by the erection and maintenance of such utilities *over such lands*. This Act has been amended several times, and re-enacted, until it now appears as R.S. 523.-010, V.A.M.S. It continued with the words "over such lands" until the Amendment of 1919 (Laws of 1919, page 207), when it was put in substantially its present wording insofar as is applicable to our question. In that Act, the words "over such lands" for the first time disappear from its language. In 1921, Laws 1921, p. 199, the section was repealed and a new section was enacted which broadened the scope of powers granted to electrical corporations but otherwise substantially followed the Act of 1919 and which is, in substance, our present Act. To paraphrase 523.010 (as applicable to the question here), "In case land * * * is sought to be appropriated by any * * * telephone [and other named public utility companies], * * * or any * * * pipe line * * * engaged in the business of transporting or carrying oil or gas by means of pipes * * * *laid underneath the surface of the ground* * * * such corporation may apply * * * by petition setting forth the general directions in which it is desired to construct their [utility including telephone line] * * * pipe line or gas line *over or underneath the surface of such lands,* * * and praying the appointment of * * * commissioners * * * to assess the damages which such owners may severally sustain in consequence of the establishment, erection, and maintenance of such [named utilities including telephone line], * * *

4. 3 Sutherland, Statutory Construction (3rd Ed.), § 6504, p. 256; Cummins v. Kansas City Pub. Serv. Co., 334 Mo. 672, 66 S.W.2d 920, 925; Willis v. American Nat'l Life Ins. Co., Mo.App., 287 S.W. 2d 98; Phillips Pipe Line Co. v. Brandstetter, 241 Mo.App. 1138, 263 S.W.2d 880.

5. Meyering v. Miller, 330 Mo. 885, 51 S.W. 2d 65(2); Christy v. Petrus, 365 Mo. 1187, 295 S.W.2d 122, 126; McCord v. Missouri Crooked River Backwater L. Dist., Mo., 295 S.W.2d 42; In re Duren, 355 Mo. 1222, 200 S.W.2d 343(8), 170 A.L.R. 391.

pipe line, or gas line *over or underneath the surface of such lands * * * "*

■ There is no question that, whatever it may have been in its historical origin, Section 523.010 now not only provides a procedure for but confers upon the public utilities therein named the substantive right of eminent domain. Phillips Pipe Line Co. v. Brandstetter, 241 Mo.App. 1138, 263 S. W.2d 880; Union Elec. Co. v. Jones, Mo., 356 S.W.2d 857; see also Shell Pipe Line Corp. v. Woolfolk, 331 Mo. 410, 53 S.W.2d 917.

In the Union Electric Company case the Supreme Court said (356 S.W.2d loc. cit. 859) that Chapter 523 "represents a consolidation of various grants of the power of eminent domain to companies organized for various purposes" and referred to various acts, including Laws of 1866, page 47. In reference to the powers granted electrical corporations it said (loc. cit. 860):

"* * * Insofar as Chapter 236 goes, there is no conflict; it just does not go as far as Chapter 523, and there is absolutely nothing to indicate that when the provisions of Chapter 523 were made applicable to electric companies, the Legislature intended to carve out of that specific grant of the power of eminent domain an exception constituting the limited grant of power in Chapter 236. The contentions of appellants that Union Electric does not have the power of eminent domain in the present factual situation is without merit."

■ Returning to the paraphrase of Section 523.010, we interpret the first appearance of the words *"laid underneath the surface of the ground"* as applicable only to pipe lines, and the words "underneath the surface" there used as those which identify and delineate the character and business of the corporation to which the power is delegated. But the words which appear later in this involved statute, to-wit, *"over or underneath"* the surface, are more general and they follow a series of named utilities to which the power is delegated. They would seem to be all-inclusive and applicable to all those companies which are specifically named in the preceding series. The section is, as we have said, an involved one which is rather haphazardly put together by reason of the various amendments. The Legislature could perhaps have made its meaning more clear had it inserted a simple comma in the two instances, between the words "gas line" and the words "over and underneath" the surface, but we do not deem the absence of this comma as vital as Poor Richard's horseshoe nail. It would appear that had the Legislature *intended* to limit the subsurface to pipe lines and the above-surface to the other named utilities, it could, and would, have expressed such thought by saying "telephone line [and other named public utilities] *over"* and "pipe lines * * * *underneath"* the surface. In view of the interpretation placed upon Section 523.010 by the previous decisions, we feel impelled to hold that it is both general and specific in its terms and that it grants the power to telephone companies to condemn portions of the sub-surface for the purpose of constructing and maintaining underground lines.

Is Section 523.010 in conflict with Section 392.100? The latter does not expressly forbid, or reserve from the grant, the right to appropriate for sub-surface facilities, but under strict construction it must be judged to some extent by what is *not* said in relation to what is affirmatively expressed. The poles, piers, and abutments are objects which are normally considered to be above ground; but we notice that the identical words are used in Section 392.080, which provides that such structures may be maintained *under* public roads, streets, and waters. It is doubtful that the Legislature intended a different meaning to be applied to the same identical series of words in two related statutes of the same chapter. Furthermore, the erection of poles, and possibly of piers and abutments, contem-

**668**

plates *some* appropriation and use of the sub-surface; so apparently the idea of some sub-surface appropriation for use was not abhorrent to the Legislature.

 A statute expressed in general terms will be given a prospective application so as to include things and conditions not existing at its passage if they come within logical and natural intent of the statute. State ex inf. Noblet ex rel. McDonald v. Moore, 347 Mo. 1170, 152 S.W. 2d 86, 87. And once the grant is made the public has the power to apply it not only to the uses which were then in vogue, but also to such new (and not inconsistent) uses as advanced civilization may suggest. The Julia Building Ass'n v. Bell Telephone Co., 88 Mo. 258, 269.

 There is no positive rule which prohibits the repeal of a special act by a general one;[6] but statutes relating to the same subject matter should be considered together and harmonized if possible so as to give meaning to all of the provisions of each.[7] If Section 392.100 does not grant the right to appropriate the sub-surface, Section 523.010 supplements and broadens the power to include it. Construed in such manner, they are in harmony. Section 392.100 provides the original score and Section 523.010 provides a concordance which makes a total orchestration. The fact that the sub-surface use may impose a greater servitude than that imposed by one over the land is a matter going to the extent of the injury, and consequent just compensation to the owner, and not of exclusion.

The judgment is reversed and remanded with directions to reinstate plaintiff's petition and proceed with the case.

STONE and HOGAN, JJ., concur.

6. Schott v. Continental Auto Ins. Underwriters, 326 Mo. 92, 31 S.W.2d 7, 11; Fleming v. Moore Brothers Realty Co., 363 Mo. 305, 251 S.W.2d 8, 15.

7. 82 C.J.S. Statutes § 366, p. 801 et seq.; Crawford, Statutory Construction, §

227–231, pp. 420–435; State ex rel. Smithco Trans. Co. v. Public Serv. Comm., Mo., 316 S.W.2d 6(6); In re Dugan, Mo.App., 309 S.W.2d 137, 143; State ex rel. Spink v. Kemp, 365 Mo. 368, 283 S.W.2d 502, 526.